376 A.2d 682.

EAST GREENWICH YACHT CLUB *et al. vs.* COASTAL RESOURCES MANAGEMENT COUNCIL *et al.*

JULY 11, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

560

562

PAOLINO, J. This is a petition for certiorari brought to review a judgment entered by a justice of the Superior Court remanding an administrative agency decision.

In December 1972, the Bayside Development Corp. (hereinafter Bayside) filed an application with the Coastal Resources Management Council (hereinafter the council) for approval of the construction of a high rise apartment building on Chepiwanoxet Island in Warwick. A subcommittee of the council held a public hearing on the application the following April and subsequently recommended its approval. Another public hearing was held before the full council 4 months later, and the application was thereafter approved.

The city of Warwick, the town of East Greenwich, and Save the Bay, Inc., together with the East Greenwich Yacht Club filed three separate complaints under G.L. 1956 (1969 Reenactment) §42-35-15 seeking judicial review of the council's action. Bayside intervened as a defendant in the action and moved for judgment on the pleadings in all three actions. It questioned the standing of each of the plaintiffs and the timeliness of the city of Warwick's filing of its complaint. On the basis of the complaints and affidavits in opposition to Bayside's motion, a justice of the Superior Court found standing on the part of each plaintiff, found no merit to the challenge of Warwick's late filing in Providence County, and therefore denied that motion. The cases were consolidated and heard before another justice of the Superior Court. That justice found the council's decision insufficient in findings of fact and conclusions of law, separately stated, as required by §42-35-12, and remanded the case to the council for further proceedings. A petition for writ of certiorari was filed by Bayside and the writ was issued in November 1975.

Bayside raises four issues in the instant proceeding: (1) Are the plaintiffs aggrieved persons under §42-35-15? (2) Was the action brought by the city of Warwick filed timely? (3) Was the city of Warwick estopped from seeking judicial review? and (4) Was the council's decision insufficient in finding of facts?

Under our Administrative Procedures Act the standing of those seeking judicial review of administrative agency decisions is determined by their meeting two criteria, that they be persons aggrieved by the administrative action taken, and that they first exhaust administrative remedies. Section 42-35-15. All the respondents in this case participated in the proceeding before the council and its subcommittee. Once the decision was made by the full council, administrative remedies were exhausted. Bayside questions, however, the propriety of granting respondents the status of aggrieved persons. This court recently formulated a test of standing.

> "The question is whether the person whose standing is challenged has alleged an injury in fact * * * if he has, he satisfies the requirement of standing." *Rhode Island Ophthalmological Soc. v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974).

While not adopted with specific reference to the statute here in question, this standard accurately defines an aggrieved person within the meaning of §42-35-15. See *New England Tel. & Tel. Co. v. Fascio,* 105 R.I. 711, 717, 254 A.2d 758, 761 (1969).

Both East Greenwich Yacht Club and Save the Bay, Inc., allege and provide supporting affidavits that their members are adversely affected by the council's action. They contend that construction will damage the coastal environment and that their use of waters surrounding Chepiwanoxet Island will thereby be affected. Use by and injury to its members provides the organizational plain-

tiff with the esssential element of an "injury in fact."[1] These organizations, as representatives of those injured in fact, stand as persons within the meaning of the statute. Section 42-35-1(f).

The town of East Greenwich, in its complaint and affidavit, asserts that its citizens also use the area and will be affected if construction is allowed. The municipality stands, then, on the same footing as East Greenwich Yacht Club and Save the Bay, Inc. Under §42-35-1(f) a governmental subdivision is specifically contemplated as a "person" under the relevant chapter. Further, the town asserts that its own plans for development of recreational facilities in adjacent waters will be affected by the proposed construction. While the city of Warwick is less specific in its complaint and did not submit an affidavit, its position as a representative of its citizens is clear as shown by paragraph 5 of its complaint which reads as follows:

> "Your plaintiff is the City of Warwick and by virtue of being the local government within the confines of Warwick is entrusted with the public health, safety, morals and welfare of its inhabitants and that because of that trust, your plaintiff is adversely affected and aggrieved by the decision of The Coastal Resources Management Council * * *."

If the decision of the council to permit construction within a municipality is faulty, that decision of necessity aggrieves that municipality and its citizens. What is of "immediate and potential value to the present and future development of this state"[2] must be of value to that sub-

---

[1] Our position on this issue parallels that of the Supreme Court interpreting the federal APA provision on standing in *Sierra Club* v. *Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and *United States* v. Students *Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

[2] So Rhode Island's coastal resources are described by the Legislature in the statute covering the council. General Laws 1956 [§46-23-1] §42-23-1 [sic], as enacted by P.L. 1971, ch. 279, §1.

division of the state in which it occurs. If this asset is not protected by the council as the Legislature has mandated it should be, that subdivision has recourse under §42-35-15. As we have in the past, we note that government may be aggrieved when the public interest is affected. *City of East Providence* v. *Shell Oil Co.*, 110 R.I. 138, 143, 290 A.2d 915, 918 (1972); *Buffi* v. *Ferri*, 106 R.I. 349, 351, 259 A.2d 847, 849 (1969). That the Legislature has designated concern for our coastal resources a matter of great public interest is evident in the legislative findings of §46-23-1.[3]

---

[3]General Laws 1956, §46-23-1 reads in part as follows:

"Legislative findings — Creation. — The general assembly recognizes and declares that the coastal resources of Rhode Island, a rich variety of natural, commercial, industrial, recreational, and aesthetic assets are of immediate and potential value to the present and future development of this state; that unplanned or poorly planned development of this basic natural environment has already damaged or destroyed, or has the potential of damaging or destroying, the state's coastal resources, and has restricted the most efficient and beneficial utilization of such resources; that it shall be the policy of this state to preserve, protect, develop, and where possible, restore the coastal resources of the state for this and succeeding generations through comprehensive and coordinated long-range planning and management designed to produce the maximum benefit for society from such coastal resources; and that preservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged, and regulated.

"That effective implementation of these policies is essential to the social and economic well-being of the people of Rhode Island because the sea and its adjacent lands are major sources of food and public recreation, because these resources are used by and for industry, transportation, waste disposal, and other purposes, and because the demands made on these resources are increasing in number, magnitude, and complexity; and that these policies are necessary to protect the public health, safety, and general welfare. Furthermore, that implementation of these policies is necessary in order to secure the rights of the people of Rhode Island to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values, and in order to allow the general assembly to fulfill its duty to provide for the conservation of the air, land, water, plant,

The second question raised by Bayside is whether the action brought by the city of Warwick was filed timely in Providence County. Section 42-35-15(b) required that requests for judicial review be instituted by filing a complaint in the Superior Court of Providence within 30 days after the mailing notice of a final decision.[4] The council's decision was rendered at a hearing on September 5, 1973, and notice thereof was mailed on Sepetmber 21, 1973. The city of Warwick filed its complaint in Kent County Superior Court on October 18, 1973, within the 30-day limit. The council, then sole defendant, and the city stipulated that the case could be transferred to the Superior Court in Providence, where action should have originated under §42-35-15(b), and that it could be filed out-of-time. An order for transfer was entered by a justice sitting in Kent County on October 26, 1973, and the complaint filed in Providence Superior Court on October 30, 1973.

Because action in Providence commenced more than 30 days after mailing notice of the council's decision, Bayside contends that the complaint was not filed timely under the controlling statute, §42-35-15(b). The city of Warwick, on the contrary, argues that the transfer and filing out-of-time were authorized by the provisions of §§9-4-6 and 9-12-2. We cannot agree with the city's position. Section 9-12-2 was repealed by P.L. 1965, ch. 55, §25

animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural environment of the people of the state by providing adequate resource planning for the control and regulation of the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state."

[4]This section was amended in 1976 to allow for filing in the Superior Court of Providence County or, in certain cases, in the Sixth Division of the District Court, but this change does not affect the instant case. General Laws 1956 (1969 Reenactment) §42-35-15(b), as amended by P.L. 1976, ch. 140, §20.

and is therefore not pertinent here. Section 9-4-6 is not applicable here as this is not an original action but strictly one seeking judicial review of an administrative agency's decision and is therefore an action under the provisions of §42-35-15(b) of the Administrative Procedures Act.

In the peculiar circumstances of this case, however, we do not agree with Bayside's contention that the late filing in Providence County should deprive the city of Warwick of its right to judicial review. The complaint was filed within the 30-day limit in the proper court, that is, the Superior Court, albeit in the wrong place, Kent County rather than Providence County. Further, there was no undue prejudice to Bayside, which did not intervene in this action until November 28, 1973. We hold that the delay in filing in Providence was not fatal.

Bayside argues that the city of Warwick is estopped from seeking judicial review of the council's decision by the fact that Bayside had been granted an exception by the city's zoning review board. The duties and concerns of a zoning board are not coextensive with those of a city or town, and we are not persuaded that in the circumstances of this case such an identity of interest exists between the city and its agency that the approval by the latter implies approval by the former. Further, the action of the zoning board was not final in that no construction could begin in reliance on that decision without approval of the council. The key element of an estoppel is intentionally induced prejudicial reliance, *Raymond* v. *B.I.F. Industries, Inc.*, 112 R.I. 192, 198-99, 308 A.2d 820, 823 (1973); none has been shown and none can be inferred in this case.

The final question raised by Bayside concerns the sufficiency of findings of fact in the council's decision. Our Administrative Procedures Act requires that:

> "Any final decision or order adverse to a party in a contested case shall be in writing or stated in the record. Any final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." General Laws 1956 (1969 Reenactment) §42-35-12.

The transcript of the hearing at which the council made its decision is not before us. Unfortunately the written decision of the council is bereft of any factfinding. It contains instead the following conclusion:

> "[T]he Council feels that there will be no substantial detriment to the ecological balance of the area. As the evidence shows the impact upon various ecological systems involved will be minimal, it is hereby the decision of this Council to grant the petition * * *."

The absence of required findings makes judicial review impossible, clearly frustrating §42-35-15, the statute for review under which the plaintiffs filed their complaints, and fails to satisfy the statutory requirements of §42-35-12.

The petition for certiorari is denied and dismissed, the writ improvidently issued is quashed, and the papers certified to us are to be returned to the Superior Court with our decision endorsed thereon.

*Higgins, Cavanagh & Cooney, Harold E. Adams, Jr.,* for petitioner.

*Joseph J. McGair,* Associate City Solicitor, *Gerald G. Norigian & Shayle Robinson,* for Bayside Development Corp., respondent.