**SAKONNET ROGERS, INC.**

v.

**COASTAL RESOURCES MANAGEMENT COUNCIL et al.**

No. 85–412–M.P.

Supreme Court of Rhode Island.

Feb. 5, 1988.

Jeffrey Teitz, Corcoran, Peckham & Hayes, P.C., Newport, for plaintiff.

Alan J. Goldman, Jeanne L. Shepard, Goldman & Biafore, Providence, for defendants.

Richard Prentiss, Providence, for intervenor.

## OPINION

SHEA, Justice.

This is a petition for the issuance of a writ of certiorari to review a Superior Court judgment affirming the decision of the Coastal Resources Management Council (CRMC) denying petitioner's application for permission to move a dwelling and construct a foundation and sewer system on a designated "coastal natural area." We quash the judgment and remand the case to the Superior Court with instructions.

The petitioner owns two lots located on Sakonnet Point in the town of Little Compton. The lot at issue is on the west side of Bluff Head Avenue (West Lot). The other lot is directly across the street on the east side of Bluff Head Avenue (East Lot).

The petitioner purchased West Lot in 1977. At the time of purchase a small house existed on the property. However, as part of the purchase agreement, the seller retained ownership of the house and later moved it off the property. West Lot remained vacant until December 1981.

In 1981 petitioner applied for a permit from the town of Little Compton to move a small cottage that existed on East Lot onto West Lot. It planned to use this cottage as a residence for a caretaker or watchman. On December 1, 1981, the town of Little Compton granted the permit, conditioned upon the approval of CRMC.[1]

Under the Coastal Resources Management Program (CRMP), as amended January 24, 1980, Sakonnet Point has been designated a "coastal natural area," CRMP § 120.3–1(D), and a part of a "shoreline system," CRMP § 120.0–2(A)(1)(b). No alteration of a shoreline system is permitted without approval from CRMC. Section 120.-0–2(C)(1). In reviewing an application for alteration, CRMC must determine, among other things, whether:

"the coastal resources are capable of supporting the proposed activity of alteration including the impacts and/or effects upon:

a) Circulation and flushing patterns

b) Sediment deposition patterns

c) Biological communities, including vegetation, shellfish and finfish resources and wildlife habitat

d) Aesthetic and/or recreational value

e) Water quality

f) Public access to and along the shore

g) Erosion and flood hazards

h) Runoff patterns

i) Existing activities." CRMP § 120.0–2(C)(4).

■ The first hearing on this application was held on May 19, 1982, before a CRMC subcommittee. The president of petitioner's corporation testified for petitioner. He addressed the impact of the proposed alteration upon the criteria set forth in § 120.0–2(C)(4). Harbor Watch, intervenor in the case, presented one of its members who testified against the application on aesthetic grounds.[2] Also introduced into the official record were several staff re-

---

1. In late December 1981, CRMC learned that petitioner, without approval from CRMC, had already poured a concrete foundation on West Lot and had moved the cottage from East Lot onto West Lot where it rested on timber cribbing. A cease and desist order was issued on January 8, 1982, to halt further construction. We do not condone these precipitous and unau-thorized actions taken by petitioner. However, these actions are not relevant to the issue presently facing the court in this appeal.

2. Harbor Watch Inc. is an association of more than 250 residents of the town of Little Compton whose aim is the preservation and enhance-

ports that recommended denial of petitioner's application. The subcommittee recommended that the full committee deny petitioner's application.

The full committee considered the matter on December 14, 1982. The petitioner presented additional testimony from the president of petitioner's corporation and an expert in the field of geology. Harbor Watch also presented two witnesses who opposed the application.

On February 15, 1983, CRMC issued its decision denying petitioner's application. The decision was later amended when council staff for CRMC discovered it had inadvertently omitted a paragraph from the original order.

ment of the natural features of Sakonnet Harbor.

3. "1. The site of the proposed construction is located at the very end of Sakonnet Point on Bluff Head Avenue in the Town of Little Compton. The site is bordered on its west by the mouth of the Sakonnet River and Rhode Island Sound. The Shoreline in the general vicinity consists of a ledge shoreline, both north and south. The entire Sakonnet Point area, including the lot in [question], is designated a coastal natural area and area for preservation restoration by the State of Rhode Island Coastal Resources Management Program. The shoreline immediately in front of the site is unique in that the ledge has been naturally cut back over the years to form a small inlet. The inlet in question is bordered by cobble beach and rises at a moderate slope to the upland. The top of the beach lies approximately at a 10 foot contour interval shown on applicants plans, and is approximately fifty (50) feet from mean high water. The top of the beach berm is backed by upland berm which consists of a remnant of old retaining wall, rocks, shoulder and earth which has naturally vegetated itself with grass, bush and other weeds. The property [behind] slopes gently away from the shore toward the street, is sparsely vegetated at present, and contains an existing foundation and dwelling which are the subject of this application. It also appears from the testimony which is consistent with the engineering report, that the foundation which presently exists is approximately seventy-five feet from storm high tide, and the natural berm is approximately sixty (60) feet. The beach, itself, is steep and composed of very course material; boulders, gravel and cobbles. Due to the steepness of the beach and [course] beach materials it would tend to decrease wave energy more so than a beach of unconsolidated, sandy material. "2. The record indicates that the site is located in [an] A and V Flood Zone.

The appeal to the Superior Court was denied on August 22, 1983, and thereafter petition for writ of certiorari was granted.

The Coastal Resources Management Council's Amended Decision includes the eight findings of fact quoted below.[3] None of these findings address the impact of the alteration upon the § 120.0–2(C)(4) criteria. Rather the first finding merely describes the geological and geographical characteristics of the lot and the fact that it has been designated as a "coastal natural area." The second finding states the type of flood zone on which the lot is located. The third finding indicates that although there is no form of shoreline protection on the proper-

"3. No form of shoreline protection exists on the property; however, the large rocks at the top of the beach do serve as a [sort] of informal buffer between surf area and upland portion of the lot.
"4. Construction of a foundation and the placement of a dwelling onto the foundation located on the site was accomplished prior to application for Coastal Resources Management Council assent. On January 8, 1982, a Cease and Desist Order No. 3082 was issued to the present applicant for activities which were undertaken without benefit of a permit of this Council. These activities specifically include the foundation and placement of a dwelling which is the subject matter of this application.
"5. The base of the solid wall foundation which is located on the property was constructed at elevation 8.5 feet. Base floor elevation pursuant to State of Rhode Island Building Code requires that the lowest floor, including basement, of the proposal located within an A–11 flood hazard zone be 12'. Therefore, the lowest floor including basement must be elevated to above 12' mean sea level to conform to State regulations. At best, this would require removal of the premises to place additional fill, to heighten the foundation and first floor elevation.
"6. The waters in the area are classified SA. A permit for individual sewage disposal system has been issued by the Department of Environmental Management. The project has the State's Water Quality Certification.
"7. The proposed project will have no effect on historic or archaeological properties on or eligible for the National Register of Historic Places.
"8. By applicant's own admission, he was aware that the activities that he undertook without benefit of a permit were in violation of various provisions of the Coastal Resources Management Program and the General Laws of the State of Rhode Island."

ty, large rocks serve as an informal buffer between the surf area and the upland portion of the lot. The fourth and eighth findings discuss the actions that led to the January 8, 1982 cease and desist order and the fact that the president of petitioner's corporation was aware that his actions were illegal. The fifth finding notes that the solid-wall foundation was constructed at 8.5 feet, 3.5 feet below the lowest floor allowed under the State of Rhode Island Building Code.[4] The sixth finding states that petitioner was issued a permit for an individual sewage system and that the project had received the state's water quality certification. The seventh finding states that the project would have no effect on historic or archaeological properties.

Under G.L. 1956 (1980 Reenactment) § 46–23–6, the "primary responsibility" of CRMC is "the continuing planning for and management of the resources of the state's coastal region." In creating CRMC, the Legislature clearly delineated its policy goals:

"[T]o preserve, protect, develop, and where possible, restore the coastal resources of the state for this and succeeding generations through comprehensive and coordinated long-range planning and management designed to produce the maximum benefit for society from such coastal resources; and that preservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged and regulated." Section 46–23–1. *See also Milardo v. Coastal Resources Management Council*, 434 A.2d 266, 271 (R.I. 1981).

These laudatory objectives, however, do not exempt CRMC from compliance with the Rhode Island Administrative Procedures Act. Under G.L. 1956 (1984 Reenactment) § 42–35–12, "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *See East Greenwich Yacht Club v. Coastal Resources Management Council*, 118 R.I. 559, 569, 376 A.2d 682, 687 (1977).

In *East Greenwich Yacht Club*, we affirmed a Superior Court ruling remanding a case back to the Coastal Resources Management Council. The Coastal Resources Management Council had neglected to include any basic findings in its decision. We found that "[t]he absence of required findings makes judicial review impossible * * * and fails to satisfy the statutory requirements of § 42–35–12." 118 R.I. at 569, 376 A.2d at 687. "[T]he rationality of an agency's decision must encompass its fact findings, its interpretation of the pertinent law, and its application of the law to the facts as found." *Arrow Transportation Co. v. United States*, 300 F. Supp. 813, 817 (D.R.I. 1969). Under § 42–35–15(g)(6), a court of review "may reverse or modify [an administrative] decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [sic], conclusions, or decisions are: * * * (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

In *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L. Ed. 2d 136, 153 (1971), the United States Supreme Court stated that to make a finding of arbitrariness, capriciousness or an abuse of discretion, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." In the instant case CRMC ignored consideration of the most relevant factors, the impact of the alteration on the § 120.0–2(C)(4) criteria but rather based its conclusions on irrelevant factors.

■ An administrative decision that fails to include findings of fact required by statute cannot be upheld. *See East Greenwich Yacht Club*, 118 R.I. at 569, 376 A.2d at

---

**4.** The petitioner testified at the hearing that he could add the additional fill necessary to satisfy the requirements of the State of Rhode Island Building Code and raise the elevation level to twelve feet.

687. Professor Kenneth Culp Davis has commented that "[e]ven if the evidence in the record, combined with the reviewing court's understanding of the law, is enough to support the order, the court may not uphold the order unless it is sustainable on the agency's findings and for the reasons stated by the agency." 3 Davis, *Administrative Law Treatise*, § 14.29 at 128 (2d Ed. 1980).

We must now determine whether the case should be remanded to CRMC for further consideration or order that the administrative decision be quashed. As discussed above, in *East Greenwich Yacht Club* we remanded a case to the Coastal Resources Management Council when it failed to include *any* basic findings in its decision. However, the case before us is distinguishable. In *East Greenwich Yacht Club* the Coastal Resources Management Council may have based its decision on relevant factors, but in the instant case it clearly did not.

■ The petitioner presented a great deal of relevant testimony addressing the § 120.0–2(C)(4) criteria. Since this evidence was not mentioned in any way by the commission in its decision, we can only conclude that it was overlooked or ignored. To delay the administrative process further by remanding the case to CRMC for additional consideration of a petition filed seven years ago would prejudice the right of the petitioner to a final adjudication of his petition within a reasonable period. It is clear to us that since CRMC failed to deny the petition on the basis of any of the § 120.0–2(C)(4) criteria, the petitioner is entitled to a judgment in the Superior Court reversing CRMC's decision on its application.

For these reasons the petition for certiorari is granted. The judgment of the Superior Court is quashed and the papers of the case are remanded to the Superior Court with our decision endorsed thereon for entry of judgment in favor of the petitioner consistent with this opinion. The judgment will order that the petitioner raise the present foundation to an elevation that complies with the twelve foot elevation re-

quirement in the State of Rhode Island Building Code.