J. Richard RATCLIFFE et al.

v.

COASTAL RESOURCES
MANAGEMENT
COUNSEL.

No. 88–291–M.P.

Supreme Court of Rhode Island.

Jan. 3, 1991.

Jeanne L. Shepard, Brian Goldman, Goldman & Biafore, Providence, Michael L. Rubin, Asst. Atty. Gen., for plaintiff.

George M. Prescott, Lincoln, for defendant.

## OPINION

KELLEHER, Justice.

This fifteen-year-old controversy comes before us pursuant to three separate petitions for certiorari. The three petitions arise from a dispute between J. Richard and Edith Ratcliffe (the Ratcliffes) and the Coastal Resources Management Council (CRMC). Prior to examining the legal issues before us, a recitation of the facts is in order. We shall address each of the three petitions as it arises in our narration of the facts.

In 1975 the Ratcliffes became owners-in-fee of a parcel of land situated in the town of Little Compton. The parcel is bounded on the west by the Sakonnet River, on the north by Almy's Creek, and on the east by a salt marsh that is owned by the Ratcliffes.

Prior to obtaining title, the Ratcliffes applied for and received a permit to build from the municipality. They also obtained an Individual Sewage Disposal System (ISDS) permit from the Rhode Island Department of Health. The following year the Ratcliffes began construction of a five-room dwelling on their parcel. The Ratcliffes began this undertaking with the installation of a cement foundation. It was then that their problems began.

The first problem occurred when the Little Compton Town Council ruled that a public right-of-way existed over the Ratcliffes' parcel. The Ratcliffes challenged this ruling in the Federal District Court for the District of Rhode Island. This initial difficulty was resolved by a stipulation and order entered in the Federal Court on March 31, 1980. The Ratcliffes then sought a decision from CRMC that there was no public right-of-way on their parcel. The CRMC decided that there was in fact no right-of-way. Thus the right-of-way issue, which had its beginnings in 1976, was resolved five years later, in June 1981.

A second and more troublesome problem for the Ratcliffes involved their right to build on their land. This difficulty first became apparent in early June 1976. At that time CRMC issued a cease-and-desist order to halt the building of the dwelling begun several months earlier. The reason for the order was the Ratcliffes' failure to obtain CRMC's approval before they commenced building their residence.[1] The Ratcliffes decided that the right-of-way dispute should be given priority. Consequently it was not until 1982 that the Ratcliffes applied for a permit to continue building on their parcel.

The CRMC rejected their request. The Ratcliffes appealed this decision to the Superior Court in accordance with G.L.1956 (1984 Reenactment) § 42–35–15. In his decision the trial justice categorized the issue before him as one of "whether the [CRMC] had proper jurisdiction over the Ratcliffes' application." The trial justice concluded that CRMC did not have jurisdiction over the Ratcliffes' parcel.

Two factors were central to the trial justice's conclusion. Initially he noted that the parcel did not fall within CRMC's definition of a barrier beach. The trial justice also emphasized that CRMC could not classify the Ratcliffes' parcel as a "barrier spit" because such a phrase cannot be found in CRMC's regulations. The trial justice concluded that to uphold CRMC's decision "would result in an unconstitutional deprivation of the Ratcliffes' right to enjoy their property."

Consequently judgment was entered in the Superior Court vacating CRMC's decision and granting the Ratcliffes permission to resume construction of their dwelling.

---

1. The Ratcliffes believed that they had fulfilled their obligations by procuring the requisite permits from the town of Little Compton and the Rhode Island Department of Health. Apparently, at the time that they began building, the Ratcliffes were unaware that CRMC had jurisdiction over their land. Indeed, the Ratcliffes have continued to challenge CRMC's jurisdiction over their property.

However, the trial justice did not stop there. After stating that CRMC lacked jurisdiction, the trial justice remanded the matter to CRMC to impose any "appropriate conditions * * * consistent with the jurisdiction of the Coastal Resources Management Council." The Ratcliffes sought review of this decision, but this court denied their petition for certiorari.

On remand, CRMC was given a second opportunity to review the Ratcliffes' proposal. A CRMC subcommittee held a public hearing to determine what restrictions applied to the Ratcliffes. Shortly thereafter, the Department of Environmental Management (DEM) suspended the ISDS permit that the Department of Health had issued in 1975.

After DEM suspended the ISDS permit, the Ratcliffes appeared before CRMC in an effort to receive permission to continue building. An "environmental advocate,"[2] who was and is a member of the Attorney General's staff, was present at CRMC's meeting. The advocate filed a motion to intervene in the action pending between the Ratcliffes and CRMC. The reason for the intervention was the advocate's desire to act as a liaison between CRMC and DEM.

The Ratcliffes challenged the advocate's intervention, arguing that no prior notice of his intervention had been afforded them. The CRMC, however, allowed the advocate to intervene. The Ratcliffes then appealed this intervention to the Superior Court.

Subsequently a Superior Court trial justice dismissed the appeal brought by the Ratcliffes because they had failed to exhaust their administrative remedies. The Ratcliffes then filed a petition for certiorari to review the trial justice's actions. This petition was the first petition for certiorari to come before this court.

The Ratcliffes turned to deal with DEM. They submitted a plan to relocate the ISDS that was originally approved in 1975 by the State Department of Health. This plan was approved by DEM fourteen years later, on April 25, 1989.

The Ratcliffes then resumed the installation of the ISDS. However, CRMC then issued a second cease-and-desist order. Once again the order was issued because the Ratcliffes had failed to obtain CRMC's approval. The Ratcliffes again filed a petition with this court for another writ of certiorari to review the issuance of the second cease-and-desist order. We issued a second writ of certiorari.

Time marched on. The CRMC held a meeting on September 12, 1989. At this meeting CRMC promulgated thirty-four restrictions that had to be satisfied by the Ratcliffes before they could resume construction of their residence. The list of restrictions was set forth in a document issued by CRMC in November 1989. This document was entitled "Assent." Apparently "Assent" is the term used for the document issued by CRMC that permits an individual to continue work on a given project. The Ratcliffes once again returned to this court by petitioning for a writ of certiorari to review the Assent issued by CRMC.

In summary, this court has, on three separate occasions, issued writs of certiorari to review the actions of CRMC. However, rather than attempt to unravel this Gordian knot of intertwined petitions for certiorari strand by strand, we opt instead to cut through to the third and dispositive writ of certiorari.

 This petition for certiorari enables us to review the contents of the Assent. The first issue presented to us is whether this court should grant a petition for certiorari in a situation in which another remedy exists. Normally this court will not issue the writ of certiorari when another remedy exists. *Matunuck Beach Hotel, Inc. v. Sheldon*, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979); *Taft v. Tribelli*, 114 R.I. 676, 678, 337 A.2d 794, 796 (1975). An exception to this principle exists when the interests of justice demand the issuance of the writ. *Barletta v. Kilvert*, 111 R.I. 485,

---

**2.** General Laws 1956 (1985 Reenactment) § 10–20–3 provides that an "environmental advocate" be appointed by the Attorney General.

The advocate's duties include maintaining and intervening in civil actions concerning the environment.

487, 304 A.2d 353, 354–55 (1973). That is, this court has exclusive jurisdiction to issue a common-law writ of certiorari on occasions in which available remedies are inadequate to safeguard a litigant from substantial harm or injustice.

██ Here, immediate review of the Assent is necessary to protect the Ratcliffes from further delay. The current ISDS permit that was reissued by DEM is scheduled to expire in eighteen months or a year after the resolution of this litigation, whichever comes first. In addition the Assent specifically states that all work must be completed on or before November 1, 1992. Thus we believe that the interests of justice demand immediate review of the Assent.

More importantly the Ratcliffes have waited long enough, and their cause is entitled to review by this court. As noted earlier in this opinion, the Ratcliffes purchased the parcel in 1975. In 1976 they obtained both a building permit from the town of Little Compton as well as an ISDS permit from the State Department of Health. The Ratcliffes commenced construction with the good-faith belief that they could in fact build on their parcel. When the Ratcliffes embarked on their endeavor, they never envisioned that the realization of their dream of a retirement retreat would become mired in a bureaucratic morass.

██ Moving on to examine the validity of the Assent, we find that there are three constraints upon any action taken by CRMC. The CRMC must comply with the terms set forth in its enabling legislation. The CRMC is also bound by its own regulations. Finally, CRMC is subject to the provisions of the Rhode Island Administrative Procedures Act (RIAPA), G.L.1956 (1988 Reenactment) chapter 35 of title 42. We

shall now discuss each of these three constraints.

The Assent, with its thirty-four restrictions, must comply with the enabling legislation. The CRMC was created by the Legislature in 1971. General Laws 1956 (1988 Reenactment) chapter 23 of title 46. This chapter gives the agency certain powers and duties in order that it may properly manage coastal resources. Section 46–23–6. The CRMC's authority extends over both land and sea. A significant factor, however, is that CRMC's authority over land is "limited to situations where there is a reasonable probability of * * * damage to the coastal environment." Section 46–23–6(B)(3).

When the facts of this litigation are applied to the terms of chapter 23 of title 46, it is apparent that the Assent contains no mention of a reasonable probability of damage to the coastal environment. The Assent merely lists thirty-four conditions that must be satisfied before the Ratcliffes can continue to build their dwelling.[3] Nowhere in the Assent is there a finding that there is the reasonable probability of damage to the coastal environment by virtue of the Ratcliffes' proposed construction. *See* § 46–23–6(B)(3).

The second constraint upon any action taken by CRMC is the agency's own regulations. The CRMC has adopted a series of regulations, the first promulgated in 1972. The most recent regulations derive from the 1978 version, with amendments made in 1983. As late as 1978 CRMC's regulations did not list High Hill Marsh Complex as a barrier beach. The High Hill Marsh Complex abuts the Ratcliffes' parcel. The 1983 amendments, however, did list the High Hill Marsh Complex as an undeveloped barrier beach. The CRMC regulations state

---

**3.** One of the thirty-four restrictions was "GG. Proof of flood insurance must be filed with CRMC prior to construction." The CRMC noted that the Ratcliffes' property is located on a federally designated undeveloped coastal barrier. The CRMC knew that flood insurance was not available for structures built or substantially improved after October 1, 1983. The CRMC therefore knew that the Ratcliffes would be un-

able to obtain flood insurance. The CRMC Assent, however, nonetheless required that the Ratcliffes procure flood insurance before resuming construction of their dwelling. Thus CRMC granted the Ratcliffes an Assent, which purported to allow the Ratcliffes to build, yet inserted a requirement within the Assent that was impossible to satisfy.

that no developments shall be allowed on a listed barrier beach.

In considering the application of the regulations to the Ratcliffes, the trial justice noted that CRMC must act consistently with the regulations. He went on to point out that either the 1972 or the 1978 regulations were applicable. The trial justice concluded, however, that no matter which regulations were applicable, CRMC did not have jurisdiction over the Ratcliffes' parcel. The reason for this assertion was that neither the 1972 nor the 1978 regulations listed the High Hill Marsh Complex as a barrier beach. It is only in 1983 that High Hill Marsh is listed as an undeveloped barrier beach. The 1983 amendments, however, cannot be applied to the Ratcliffes, as they had petitioned CRMC before that date. As noted earlier, the Ratcliffes began building their dwelling in 1976; so, as the trial justice noted in 1987, CRMC could not exercise jurisdiction over the Ratcliffes by means of the regulations, whether the 1972 or the 1978 regulations were applicable.

Finally, CRMC's Assent must comply with the RIAPA. This court has held that CRMC must satisfy the requirements of the RIAPA. *Sakonnet Rogers, Inc. v. Coastal Resources Management Council,* 536 A.2d 893, 896 (R.I.1988); *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 568–69, 376 A.2d 682, 687 (1977). The RIAPA provides that "[a]ny final order [by an agency] shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Section 42–35–12.

The CRMC did not support this Assent with any facts. Indeed, the only findings of fact put forth by CRMC were subsequently rejected by the trial justice in 1987. Relying on the findings, the trial justice found that CRMC lacked jurisdiction over the Ratcliffes' property. Since CRMC has failed to support the Assent with the requisite findings of fact, we are of the opinion that its administrative decision fails to comply with the RIAPA. *See Sakonnet Rogers, Inc.,* 536 A.2d at 896.

The CRMC's Assent does not comply with the requirements of the enabling legislation, CRMC's regulations, or the RIAPA. Given these facts, we must now determine an appropriate course of action. One avenue that this court has followed in the past is to remand the case to CRMC for further consideration. *See East Greenwich Yacht Club,* 118 R.I. at 569, 376 A.2d at 687. On other occasions, however, this court has granted the petition for certiorari and remanded the case to CRMC with directions to enter judgment consistent with the opinion. *See Easton's Point Association, Inc. v. Coastal Resources Management Council,* 559 A.2d 633 (R.I.1989); *Sakonnet Rogers, Inc. v. Coastal Resources Management Council,* 536 A.2d 893 (R.I. 1988).

In the furtherance of justice, this court now finds that the Ratcliffes may continue to build on their parcel in a fashion that is consistent with the permit granted by DEM. To remand the case for further consideration would prejudice the right of the Ratcliffes to final adjudication within a reasonable period. *See Sakonnet Rogers, Inc.,* 536 A.2d at 897. In *Sakonnet Rogers* the petition was filed seven years prior to the opinion issued by this court. If seven years was a long wait in *Sakonnet Rogers,* the Ratcliffes' wait has been an extraordinarily and unjustifiably long wait. The Ratcliffes began building in 1976. Fourteen years have come and gone. At this point any further delay would be intolerable.

Thus the petitions for certiorari with respect to the motion to intervene and the cease-and-desist order are denied and dismissed. The petition for certiorari with respect to the Assent is granted. The CRMC's Assent is quashed, and the case is remanded to CRMC with the instructions to allow the Ratcliffes to continue on with the building of the dwelling in a manner that complies with the permit granted by DEM.

SHEA, J., did not participate.