[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court are three consolidated appeals by Daniel and Kim Kaplan, Philip and Jacqueline Pelletier, and Bruce E. Harrington (hereinafter "plaintiffs") from the decision of the Coastal Resources Management Council (hereinafter "CRMC"). The plaintiffs seek a reversal of the CRMC's October 22, 1991 decision denying their applications to construct and maintain three (3) adjoining recreational boating facilities on Nanaquaket Pond, in the Town of Tiverton, Rhode Island. Jurisdiction is pursuant to Rhode Island General Laws 1956 (1988 Reenactment) §42-35-15.
STATEMENT OF FACTS
The plaintiffs are the owners of real property bordering on Nanaquaket Pond in Tiverton, Rhode Island.[1] The plaintiffs submitted applications with the CRMC seeking to construct and maintain three (3) residential dock facilities on the western shore of Nanaquaket Pond in the immediate vicinity of each other.[2] The plaintiffs were jointly represented by counsel and presented experts. Their applications were treated as one by the CRMC.
The waters of Nanaquaket Pond are classified as SA by the Rhode Island Department of Environmental Management. Nanaquaket Pond is designated by the Coastal Resources Management Program (hereinafter "CRMP") as Type 2 water under the CRMC's regulations. Type 2 waters are designated as low intensity use waters with high scenic value that support recreational and residential uses. Docks and other small-scale alterations associated with residential waterfronts are considered suitable. See CRMP section 200.2(b). The CRMC's goal is to maintain and restore the high scenic value, water quality, and natural habitat values of these areas. See CRMP Section 200.2(c)(1). Residential boating facilities are permitted provided that the applicants demonstrate that there will be no significant adverse impact to coastal resources, water dependent uses or public use and enjoyment of the shoreline and tidal waters of the State. See CRMP section 200.2(c)(3).
The CRMC held public hearings on June 25, 1991 and October 22, 1991. Plaintiffs presented Jonathan Feinstein, an expert biologist, who testified that the proposed docks complied with all CRMP's requirements. Further, plaintiffs' wildlife biology expert, Scott Rabideau, testified to the "uniform, but sparse" shellfish population in the area. See, June 25, 1991 Transcript at p. 117. Plaintiffs' expert in commercial fishery resources and economics, Dr. John Milton Gates, confirmed Mr. Rabideau's findings. See, June 25, 1991 Transcript at p. 132.
Testifying in opposition to the proposed docks were Dr. William B. Sweeney, an Economics expert, representing the Rhode Island Shellfishermen's Association; Dr. Arthur Ganz, DEM's senior marine biologist; The Audubon Society of Rhode Island; Save the Bay and several members of the Rhode Island Shellfishermen's Association. To support their recommendations that the CRMC deny the applications, the remonstrants noted that the dock would result in an adverse impact to coastal resources. Specifically, Dr. Ganz produced evidence that the proposed docks would displace the oyster and quahog populations and would significantly impact public access to the shellfish. See, October 22, 1991 Transcript at pp. 134-153. Also, the individual shellfishers testified to how the docks would detrimentally impact their earning potential. The President of the Rhode Island Shellfishermen's Association introduced his survey which disclosed that at least 16 shellfishers earned approximately $102,000 during 1990 from the shellfish harvesting in Nanaquaket Pond. See October 22, 1991 Transcript at p. 171; See also, R.I. Shellfishermen's Assoc., Survey of Nanaquaket Pond Shellfish Harvest, July 6, 1991.
After hearing all the evidence the CRMC concluded that plaintiffs failed to satisfy their burden of proof, and that the docks were not in conformity with the CRMP. The CRMC further found that the dock posed a threat to the shellfish resources and the public uses of the tidal/intertidal areas of the pond. Therefore, on October 22, 1991, the CRMC denied plaintiffs' applications to construct and maintain three (3) adjoining residential boating facilities.
STANDARD OF REVIEW
This Court's review of Coastal Resources Management Council decisions is governed by Section 42-35-15(g) of Rhode Island General Law which provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision this Court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Rather, this Court must confine itself to a review of the record to determine if "legally competent evidence" exists to support the agency decision. The Environmental ScientificCorporation v. Louise Durfee, P.C. No. 90-7595, slip op. at 15, (R.I. Sup. Ct. filed March 2, 1993); Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992). "If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Id. Thus, this Court will reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, question of law decided by Administrative Agencies are not binding on the court. Narr. WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6, (1977). Thus, this Court "may review questions of law to determine what the law is and its applicability to the facts." Chenot v. Bordeleau,561 A.2d 891, 893 (R.I. 1989); Carmody, 509 A.2d at 458.
DISCUSSION
The plaintiffs first argue that the CRMC completely ignored their expert's testimony, thus making the CRMC's decision arbitrary, capricious and an abuse of discretion. This assertion stems from the CRMC's failure to expressly allude to plaintiff's three (3) expert witnesses in the decision. In support of this contention, plaintiffs rely on Sakonnet Rogers v. CRMC,536 A.2d 893 (R.I. 1988), for the proposition that where evidence is presented but not mentioned in any way in the CRMC decision, a court can only conclude that the evidence was overlooked or ignored and that said decision should be overturned. Id. at 897. While the CRMC's decision does not specifically mention plaintiffs' expert witnesses, plaintiffs' argument is flawed asSakonnet is misapplied. In Sakonnet, the findings of fact in the CRMC's decision failed to address the most important factors, the impact of the alteration upon the CRMP criteria.
In Citizens to Preserve Overton Park, Inc. v. Volpe,401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136, 153 (1971), the United States Supreme Court stated that to make a finding of arbitrariness, capriciousness or an abuse of discretion, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." The decision in the case at bar notes the relevant factors, the possible violations of CRMP sections 200.2, 300.1 and 300.4 if said applications are granted. Further, under Rhode Island General Law 1956 (1980 Reenactment) § 46-23-6, the "primary responsibility" of the CRMC is "the continuing planning for and management of the resources of the state's coastal region." Pursuant to statute, the CRMC is charged with the goals:
 "[T]o preserve, protect, develop, and where possible, restore the coastal resources of the state for this and succeeding generations though comprehensive and coordinated long-range planning and management designed to produce the maximum benefit for society from such coastal resources; and that preservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged and regulated." Section 46-23-1; See also, Milardo, 434 A.2d at 271.
Accordingly, plaintiffs' contention is without merit as the decision is based on a consideration of all relevant facts.
Additionally, plaintiffs argue their due process rights were violated because the CRMC denied them a fair and impartial hearing as several CRMC members were patently biased. Specifically, plaintiffs contend one council person, John Lyons, was openly hostile toward their witnesses:
 Mr. Lyons: . . . Now, every so often, the Council finds itself in a position where it can establish a precedent and go ahead and protect some very, very valuable resource we have, and I don't care what they're coming up with, who they check with or they didn't check with, all I know is I lived in the area all my life. I know what the people in the area feel about it, unfortunately, they are not up here tonight on it. I know that, but I can speak for them with no problem at all on it, and here is an opportunity for the Council to go ahead and grab the bull by its horn and say, `Dam it, no. It's Type II waters and Type II waters you may put some docks in it, but Type II waters you can't go ahead and arbitrarily put it on it. As far as we're concerned, it's going to destroy the vista and the whole situation and it's going to destroy the pond.' And for the sake a few extremely wealthy people, that's very recently many of them, and I'm talking about the last fifteen or twenty years suddenly discovered Tiverton and the pond and now they want to go ahead down and they want to desecrate something that makes the place unique, and probably one of the reasons they built their houses there to begin with, and if they haven't got brains enough to protect themselves on it, I think that we should be in a position to protect them on it. . . .
See, June 25, 1991 Transcript at pp. 149-150 (emphasis added).
Due process requirements of a fair trial apply to procedures of administrative agencies. Bourque v. Dettore, 589 A.2d 815, 823 (R.I. 1991); Davis v. Wood, 427 A.2d 332, 336 (R.I. 1981). While an adjudicator must be impartial and must not attempt to establish proof to support the position of any part to the controversy, Id. at 337, the burden is on the plaintiffs to overcome a "presumption of honesty and integrity in those serving as adjudicators, which is a validating feature of our entire system of administrative law as presently constituted." LaPetite Auberge, Inc. v. R.I. Commission for Human Rights,419 A.2d 274, 284 (R.I. 1980), (citing Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 724 (1975). Further, our Supreme Court enunciated the standard in judging the fairness of a public hearing in Golden Gate Corp. v. Town ofNarragansett, 116 R.I. 552, 562, 359 A.2d 321, 326 (1976):
 "The crucial question to be answered is `*** whether a fair-minded person in attendance at all of the meetings on a given issue could, at the conclusion thereof, in good conscience say that everyone had been heard who, in all fairness, should have been heard and that the *** body required by law to hold the hearings gave reasonable faith and credit to all matters presented, according to the weight and force they were in reason entitled to receive.'"
Despite the fact that the subject remarks made by council member Lyons may have been inappropriate in the circumstances, this Court's review of the entire record indicates that plaintiffs received a fair and impartial hearing. The transcript evidences that other CRMC members defended plaintiffs' witnesses and voiced opposition to Mr. Lyon's comments:
 Mr. James: . . . Mr. Lyons, I'm going to take exception, because somebody needs to do this because we're getting a hell of a one-sided slant here. Mr. Hicks earlier tried to bring up the issue what we're talking about here is an activity which is sanctioned by the Coastal Resources Management Council in their policy handbook, and the idea is, that's what we're here to decide, not an emotional issue. You know, you're not capable of speaking for all the people that live on this pond, because we have five of them here asking for an application . . . . I have some questions that I think are non-emotional that are stricktly to derive some facts out of this thing so that we can make a decision based on facts and not on emotions.
See, June 25, 1991 Transcript at pp. 151-152 (emphasis added). Furthermore, the CRMC voted to deny plaintiffs' application eight (8) to one (1) with one (1) abstention. This virtual unanimity further demonstrates that all members gave reasonable faith and credit to all aspects of the evidence presented.
Plaintiffs' final argument is that the CRMC's decision is clearly erroneous in view of the entire record. However, after review of the record, this Court is satisfied that the decision of the CRMC is supported by reliable and probative evidence. While the plaintiffs produced three (3) expert witnesses, the remonstrants set-forth a plethora of evidence from which the CRMC could determine that plaintiffs were unable to satisfy the standards articulated in the relevant CRMP sections. Although the presence of conflicting testimony necessarily leads to credibility determinations, such credibility determinations should be left to the fact finder's, "impressions as he or she observes a witness and listened to testimony," The EnvironmentalScientific Corp., slip op., at 10; Laganiere v. Bonte SpinningCo., 103 R.I. 191, 196, 236 A.2d 256, 258 (1967), thus requiring the appellant court to defer to the evidentiary findings of the fact finders. The Environmental Scientific Corp., slip op. at 11. The record in the case at bar indicates that the CRMC heard conflicting testimony; weighed the credibility of the witnesses and made a decision supported by reliable and probative evidence. Even in cases where the Court after reviewing the record and evidence might be inclined to view the evidence differently than did the Agency, Cahoone v. Board of Review, 104 R.I. 503, 506,246 A.2d 213 (1968), the Court must uphold the agency decision if it finds any competent evidence upon which the Agency decision rests. E. Grossman and Sons, Inc. v. Rocha, 118 R.I. 276,373 A.2d 496 (1977).
After review of the entire record, this Court finds that the CRMC's decision is supported by reliable, probative evidence and is not arbitrary, capricious or an abuse of discretion. The agency decision is amply supported by the evidence in the whole record, most notably the findings of the staff senior marine biologist concerning the dock and its threat to the Nanaquaket Pond environment. Accordingly, the decision of the CRMC is hereby affirmed.
Counsel shall prepare the appropriate judgment for entry.
[1] Harrington owns property located at 404 Nanaquaket Road; the Pelletiers own property located at 420 Nanaquaket Road; and the Kaplans own property at 294 Nanaquaket Road.
[2] Harrington proposed a dock ninety-five (95) feet long; the Pelletiers proposed a dock one hundred ten (110) feet long; and the Kaplan's dock is planned at one hundred five (105) feet long.