[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
In this action, The Brenton's Cove Condominium Association ("Association") appeals the decision of the Coastal Resources Management Council ("CRMC") granting the Rhode Island Department of Environmental Management ("DEM") a Special Exception to construct a courtesy dock at Fort Adams State Park ("Fort Adams") in Newport, Rhode Island. The Court's jurisdiction to review this decision is derived from the Rhode Island Administrative Procedures Act, G.L. 1956, § 42-35-15 et. seq. ("RIAPA").
 Facts and Travel
The waters in which the courtesy dock would be located have been designated by the CRMC as Type 1 waters. Type 1 waters are the most sensitive within the six classifications of waters under the Rhode Island Coastal Resources Management Plan ("CRMP"). The CRMC's goal with respect to Type 1 waters is ". . . to preserve and protect Type 1 waters from activities and uses that have the potential to degrade scenic, wildlife, and plant habitat values, or which may adversely impact water quality or natural shoreline types." CRMP, Section 200.1. Type 1 Conservation Areas. In order to construct a courtesy dock at the Fort Adams boat launch, the DEM was required to obtain a Special Exception from the CRMC. CRMP, Rule 130.
The DEM filed a Special Exception application on March 5, 2003. The CRMC held a public hearing with respect to the application on June 10, 2003, at which time a variety of evidence was introduced for consideration. The CRMC heard testimony from both proponents and objectors. Several members of the Association testified regarding the negative impact this dock would have on the birds in the area and the water quality. (Tr. at 81-82.) Other members of the public testified in favor of the Special Exception, citing safety and public need. (Tr. at 84-87.) CRMC staff engineering and biological findings were also introduced into evidence.
In the CMRC's Engineering Review ("Engineering Review"), the staff found that the courtesy ramp would be available to the public with access to the shore, would enhance the safety and function of the existing facility, would not represent an expansion to the boat ramp or boating in the nearby harbor, and would not result in any negative environmental impact. Engineering Review at p. 1. Furthermore, the Engineering Review found that because the DEM's proposal was to enhance the existing ramp, there would be no other reasonable alternative available to fulfill that purpose. Id.
The CRMC Biologist's Report ("Biologist Report") noted that impact to the natural area currently exists due to the current use at Fort Adams. Biologist Report at p. 1. It also found that the courtesy ramp as proposed by DEM would appear to have minimal impact on coastal biological processes. Id. Consequently, it concluded that there would be "no biological objections to this project provided the `assent stipulations' are strictly adhered to." Id.
Following the public hearing, the CRMC reached a unanimous decision granting the Special Exception. The CRMC noted that it was adopting and incorporating the findings made by the CRMC staff that the dock would have minimal biological effects on the environment and that it would be safe from an engineering perspective. Furthermore, the CRMC found that the DEM had met its required burden of proof. Specifically, the CRMC concluded that the courtesy dock would:
 "a. Serve a compelling public purpose which does provide benefits to the public as a whole as opposed to individual or private interests; b. All reasonable steps have been taken to minimize environmental impacts and/or use conflicts; c. There is no reasonable alternative means of, or location for serving, the compelling public purpose cited." (CRMC Decision at 3.)
The Association subsequently filed an appeal to this Court. In essence, the Association contends that CRMC in granting the Special Exception erred in finding that DEM had met its burden of proof, failed to adhere to its own policy regarding the subject water, and/or otherwise contravened the provisions of the Federal Clean Water Act, 33 U.S.C. § 1251 et. seq. ("FCWA") and the Rhode Island Clean Water Act, G.L. 1956 § 46-12-1 et. seq. ("RICWA").
 Standard of Review
In reviewing the decision of an administrative agency such as CRMC. RIAPA provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or law; [sic]
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. G.L. § 42-35-15(g)(1).
In reviewing decisions of administrative agencies, the Superior Court sits without a jury and confines its review to the record. EnvironmentalScientific Corporation v. Durfee, 621 A.2d 200, 203-204 (R.I. 1993). As such, this Court is not able to consider matters that the agency did not entertain. Easton's Point Association et al. v. Coastal ResourcesManagement Council et al., 522 A.2d 199, 202 (R.I. 1987) (citing Milardov. Coastal Resources Management Council, 434 A.2d 266, 270 (R.I. 1981)). This Court lacks the authority to assess witness credibility or to substitute its judgment for that of the agency concerning the weight of evidence on questions of fact. Environmental Scientific Corporation,621 A.2d at 208. However, this Court does retain the power to review all questions of law. Id. In reviewing an agency decision, this Court must determine whether there is any legally competent evidence to support the agency findings. Id. (citing Barrington School Committee v. Rhode IslandState Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). "If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Id. However, the Court may reverse or modify a final decision of an agency if it is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Id. (citing Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988)).
 DEM'S Burden Under the Special Exception
In order to obtain a Special Exception, the CRMC requires that DEM prove by a fair preponderance of the credible evidence that a compelling public purpose providing benefits to the public as a whole is served by said exception, reasonable steps were taken to minimize the environmental impact, and no reasonable alternative means or locations were available other than as contemplated by the Special Exception. CRMP, Section 130.
Turning to the first requirement, there is considerable record evidence to support the conclusion that the Special Exception would serve a compelling public purpose. There is substantial evidence that the proposed courtesy ramp will enhance use of the facility. There is also considerable evidence that the courtesy ramp will provide greater public access to Brenton's Cove and Newport Harbor, more generally. Furthermore, the evidence supports the conclusion that the ramp will provide a safe means for boaters to embark and disembark their vessels.
Regarding the second requirement, there is substantial evidence which demonstrates that the proposed courtesy ramp will have minimal impact on the surrounding environment while carrying out its intended purpose. The size of the ramp allows it to effectuate the CRMC's objectives of safety while the physical habitat is minimally impacted. There is also evidence that the ramp will aid in lowering emissions while maintaining the current amount of users.
As relates to the last requirement, there is sufficient evidence to demonstrate that there is no reasonable alternative location for this courtesy ramp. The alternatives for the location of the ramp were considered in the preliminary stages of planning. However, they were found to be impracticable. At a meeting with the Newport Waterfront Commission, other options were considered for a location of this ramp, and, again, no other location was found. The removal and relocation of the entire ramp was considered to have a negative environmental impact, as well.
There is nothing in the record to suggest that the evidence was misconstrued by CRMC when it approved the Special Exception.[1] Putting aside the testimonial evidence, the numerous exhibits, including site plans, photographs, engineering reviews, biological report, water quality certifications, and preservation reports, are more than adequate for CRMC to conclude that each of the three elements had been proven. Although various members of the Association opposed the granting of the Special Exception, the CRMC was not constrained to accept that testimony over the compelling body of countervailing evidence as discussed previously. There is simply no basis in law or fact for this Court to reverse the findings made by CRMC. To the contrary, the evidence clearly demonstrates that the CRMC's findings were well supported by legally competent evidence.
 CRMC General Policy
The Association also challenges the CRMC decision asserting that it is erroneous because it fails to effectuate CRMC's governing policy. Specifically, the Association asserts that the CRMC erred in that it failed to follow the general policy for Type 1 waters. Section 200.1 of the CRMP establishes certain policies to be followed in conservation areas. In particular, the general policy to be followed in Type 1 waters is that existing structures are to be removed when possible and additional structures are not to be permitted.
On the basis of the entire record, it is apparent that the CRMC has not ignored its own general policy regarding Type 1 waters. Although the courtesy dock may be a prohibited use and the CRMC's goal is to eliminate any such non-conforming use as provided in Section 200.1C.3 of the CRMP, it is equally clear that the CRMC had the authority to grant the Special Exception and in doing so made the relevant inquiry and necessary findings.
The CRMC has been given broad authority to develop policies in order to effectuate the primary goal of the CRMC, which is to "preserve, protect, develop, and where possible, restore the coastal resources of the state for this and succeeding generations. . . ." Section 46-23-1. Furthermore, the CRMC has complied with the requirements of RIAPA.Ratcliffe v. The Coastal Management Resources Council, 584 A.2d 1107, 1111
(R.I. 1991). RIAPA requires administrative agencies to follow their own rules and regulations." Appeal of Gielen, 652 A.2d 144, 147, 139 N.H. 283,288 (N.H. 1994). In this case it is clear that CRMC has done so. Under §46-23-6(2)(iii), the CRMC has the authority to
 ". . . approve, modify, set conditions for, or reject the design, location, construction, alteration, and operation of specified activities or land uses when these are related to a water area under the agency's jurisdiction, regardless of their actual location."
Furthermore, §§ 46-23-6(2)(ii)(A)(I) — (III) require that any person who makes a proposal regarding development in tidal waters
 "shall be required to demonstrate that its proposal would not (I) Conflict with any resources management plan or program; (II) Make any area unsuitable for any uses or activities to which it is allocated by a resources management plan or program adopted by the council; or (III) Significantly damage the environment of the coastal region."
The CRMC possesses broad powers to enact rules in order to regulate specific tidal waters in Rhode Island and is bound by both the enabling legislation and its promulgated rules. Id. At 9. Furthermore, any proposal that may have an effect on tidal waters must not conflict with the CRMP, and it must be adopted by the CRMC.
In fulfilling the legislative mandate of §§46-23-6(2)(ii)(A)(I)-(III), the CRMC allows for departures from prohibited activities in tidal water by creating a Special Exception. Section 130 — Special Exception requires an application to demonstrate that:
 "(1) The proposed activity serves a compelling public purpose which provides benefits to the public as a whole as opposed to individual or private interests. The activity must be one or more of the following: (a) an activity associated with public infrastructure such as utility, energy, communications, transportation facilities; (b) a water-dependent activity that generates substantial economic gain to the state; and/or (c) an activity that provides access to the shore for broad segments of the public.
 (2) All reasonable steps shall be taken to minimize environmental impacts and/or use conflict.
 (3) There is no reasonable alternative means of, or location for, serving the compelling public purpose cited."
The record demonstrates that the CRMC adhered to its own rules and regulations. Section 130 of the CRMP provides an avenue for relief from prohibited uses. Furthermore, that section establishes the factors to be considered when an applicant wishes to participate in what the CRMC delineates as a prohibited activity. All the parties involved in this matter, including the CRMC, recognize that constructing a courtesy dock is a prohibited activity in Type 1 waters. However, relief from prohibited activities may be permitted when an applicant meets the Section 130 requirements. Those standards were met at the hearing as previously found by this Court.
 Federal and State Clean Water Policy
The Association argues that the CRMC's decision was clearly erroneous in light of the general federal law policy to upgrade rather than downgrade sensitive waters. The Association contends that pursuant to the Federal Clean Water Act, 33 U.S.C. § 1251 et. seq., agencies are required to have a plan to upgrade waters. The Federal Environmental Protection Agency establishes the Antidegradation Policy, which states:
 "(a) The State shall develop and adopt a statewide antidegradation policy and identify the methods for implementing such policy pursuant to this subpart. The antidegradation policy and implementation methods shall, at a minimum, be consistent with the following:
 (1) Existing instream water uses and the level of water quality necessary to protect the existing uses shall be maintained and protected." 40 C.F.R. § 131.12.
Section 402 (o) of the Clean Water Act, the Anti-Backsliding Program has been codified as 33 U.S.C. § 1342(o). Section 1340(o), in pertinent part, provides:
"(1) General Prohibition
 In the case of effluent limitations, established on the basis of subsection (a)(1)(B) of this section, a permit may not be renewed, reissued, or modified on the basis of effluent guidelines promulgated under section 1314(b) of this title subsequent to the original issuance of such permit, to contain effluent limitations which are less stringent than the comparable effluent limitations in the previous permit."
The Association's contention is without merit. CRMC's decision is in compliance with applicable water quality criteria. Specifically, the Special Exception does not violate the FCWA. To argue that the Special Exception violates the "anidegradation policy" as provided in40 C.F.R. § 131.12 is spurious. DEM is the designated state water pollution control agency for all purposes under FCWA. The Director of DEM is also responsible for enforcing the provisions of the Rhode Island Clean Water Act. Section 46-12-1 et. seq. In acting in such capacities, DEM is charged with the responsibility of maintaining the integrity of the water supply. In the case before the Court, it is not disputed that a water quality certificate for the project was properly obtained. Furthermore, the grant of that certificate has not been timely appealed. Moreover, CRMC's review of the proposed project concluded that the water quality would not be degraded as a result of the project. Based on the Court's review of the evidence as previously discussed, there is credible evidence to support that conclusion. In summary, there is simply no basis for the Association's contention that approval of the Special Exception contravenes the provisions of either FCWA and/or RICWA.
 Conclusion
After a review of the entire record, this Court finds that the decision of the CRMC was supported by reliable, probative, and substantial evidence. The record supports the conclusion that the DEM met its requisite burden of proof. There is also ample evidence to demonstrate that the Special Exception does not contravene either the general policies of CRMC or the water quality provisions of FCWA and RICWA. The Court will not disturb the well-reasoned findings by CRMC in granting the Special Exception. Accordingly, the appeal is denied. Counsel shall prepare a form of judgment consistent with this Court's decision.
[1] The Association also contends that the CRMC's approval of the Special Exception is predicated on inadmissible evidence in the form of a Newport City Council resolution. That argument is without merit. First, there was ample evidence to support CRMC's approval, apart from the council's resolution. Also, it is abundantly clear from the record that the council was fully aware Type 1 waters were at issue, rather than Type 2 waters as incorrectly cited in the council's resolution.