DECISION
This matter is before the Court on the complaint of the plaintiff Michael Pellegrino (Pellegrino) filed pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15, seeking judicial review of a final decision of the Coastal Resources Management Council (CRMC). CRMC denied the plaintiff's application for a residential dock.
Pellegrino applied to the CRMC for assent to construct a residential dock in tidal waters in front of his home along Wickford Harbor located in North Kingstown, Rhode Island. The CRMC Dock Subcommittee referred the application for hearing before the full CRMC for determination. A hearing was held on July 25, 1995. On that date, the Council voted 14 to 1 to deny the application based on the following motion.
 ". . . I would move that the application be denied based on the following facts: Lateral access is not provided, the area is subject to severe weather; as your packet indicates, several docks have been lost from that area; the engineer cannot indicate whether it is designed for a ten, 50 year storm, a hundred year storm; the mooring field itself is closer than 50 feet from the dock; in our packet we have information indicating that the precedent of Nugent v. Falcone applies in this instance, where the area is used for recreation, et cetera, so for those reasons I move to deny the application." (Tr. at 140.)
In a written decision issued November 1, 1995, CRMC concluded that the dock would have a reasonable probability of causing a detrimental impact upon the coastal resources of the State of Rhode Island. (Dec. at 8.) Pellegrino requests that this Court reverse the decision of the CRMC.
Standard of Review
The review of a decision of the CRMC by this Court is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the CRMC's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflict of Interests Commission, 509 A.2d at 458.
Review of CRMC's Decision
Pellegrino argues that CRMC's denial of his application was arbitrary and capricious and must be reversed. He contends that the evidence demonstrates that the dock met all of CRMC's structural, engineering and biological requirements. He also contends that the dock will not interfere with public access to the shoreline. Further, he argues that a CRMC restriction which requires a 50' setback from an approved mooring field is inapplicable because, in this case, the boundaries of the mooring area have not been identified by the Town, and the mooring field has not been approved by CRMC, as required by its own regulations.
In its written decision, CRMC made a finding ". . . that [Pellegrino's] application does not comply with CRMP [Coastal Resource Management Program] sections 120, 200.3, 210.1, 210.5, 210.6, 300.4, and 330." (Dec. at 7.) The specific facts and reasoning which support CRMC's findings of non-compliance for each section were not articulated in the decision.
The Rhode Island Supreme Court has held that CRMC must comply with the requirements of the Rhode Island Administrative Procedures Act. (RIAPA) Ratcliffe v. Coastal Resources ManagementCouncil, 584 A.2d 1107, 1111 (R.I. 1991); Sakonnet Rogers,Rogers, Inc. v. Coastal Resources Management Council,536 A.2d 893, 896 (R.I. 1988). In pertinent part, RIAPA provides:
 "Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supported by a concise and explicit statement of the underlying facts supporting the findings." Section 42-35-12.
This Court will not speculate about CRMC's rationale. The Court, however, has reviewed the record in this case and the applicable regulations, and finds that the decision of CRMC is arbitrary and capricious, and is therefore vacated.
The primary responsibility of the CRMC is "the continuing planning for and management of the resources of the state's coastal region." G.L. 1956 (1991 Reenactment) § 46-23-6. The policy goals of the General Assembly in establishing the CRMC are:
 ". . . to preserve, protect, develop, and, where possible, restore the coastal resources of the state for this and succeeding generations through comprehensive and coordinated long range planning and management designed to produce the maximum benefit for society from these coastal resources . . . ."
The enabling statute, far from granting broad discretion to the CRMC, specifically directs the Council to be guided by a single overriding criterion, e.g. "[P]reservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged, and regulated." Section 46-23-1; see Milardo v.Coastal Resources Mgmt. Council, 434 A.2d 266, 271 (R.I. 1981).
The dock, as proposed by Pellegrino, consists of a 4' x 60' fixed pier, and a 7.5' by 20' float connected to the pier by a 12'-16' ramp. The dock, including the float, extends 40 feet beyond mean low water. This 40 foot specification complies with CRMP Section 300.4.E. 3.K which requires that residential boating facilities not extend beyond either 25 percent of the distance to the opposite shore measured from mean low water, or 50 feet seaward of mean low water, whichever is lesser. As originally proposed, the plans for the dock also called for two 12" diameter tie-off piles located twelve feet beyond the float and therefore at 52 feet beyond mean low water. However, at the hearing, Pellegrino's professional engineer testified that the dock could be constructed without the two tie-off piles. (Tr. at 133.) Thus, the need for a two-foot variance was eliminated, and is therefore not an impediment to Pellegrino's application. Somewhere seaward beyond the proposed dock there exists a town mooring area, the boundaries of which are not known and over which there exists much controversy in this matter.
The CRMC found as a fact that the dock, would interfere with the public trust rights of fishery, navigation and access. (Dec. at 7.) This finding is not supported by the evidence. The North Kingstown harbormaster testified that the dock ". . . wouldn't effect [sic] the access to the mooring field as much as it would the shoreline access." The record discloses the presence of several large rocks in the waters beginning approximately 22 to 30 feet beyond the proposed dock, and that the waters are as low as 2 feet deep at low tide along the dock. (Tr. at 47-49, 132.) The record discloses that boating and fishing are already limited to areas well beyond the edge of the proposed dock because of the presence of these rocks and the shallow waters. Additionally, the record discloses that Pellegrino agreed to construct steps leading from one side of the dock to the other in order to maintain lateral access along the shoreline for the benefit of the public. (Tr. at 15.) The CRMC has recognized in the past that such a proposal adequately addresses and preserves shoreline access. (Tr. at 155-156.)
The record also does not support the CRMC's conclusion that the proposed dock will have a detrimental effect on the State's coastal resources. The Department of Environmental Management issued a Water Quality Certification for the project, and determined that the project would not violate water quality criteria for the area. (DEM-Memorandum 4-5-95.) Significantly, CRMC's principal environmental scientist reported that there were no biological objections to the proposed dock. His report stated, "The proposed dock is not expected to significantly impact biological and other natural resources, accordingly, there is no biological objection." (Biologist Report at 1.) CRMC's senior civil engineer had no structural or engineering objections to the dock, and he reported, "The proposed dock does appear to be adequately designed and therefore there are no engineering objections to the . . . . project." (Engineer's Report at 1.) Both the environmental scientist and the civil engineer recommended denial of the application, however, based on the Town's representation that the proposed dock was within 10 feet of a Town mooring area in violation of a CRMC regulation requiring a 50 foot setback from an "approved" mooring field. The State Historical Preservation and Heritage Commission and the Town's Conservation Commission had no objections.
The standards established by CRMC to be applied in the construction of residential docks, piers, and floats, are set forth in CRMP Section 300.4.E.3. There is no requirement that a dock, pier, or float be designed to withstand 10-year, 50-year, or 100-year storm events, and therefore denial of Pellegrino's application on that basis is clearly erroneous. The testimony of Raymond F. Cherenzia, a registered professional engineer who designed Pellegrino's dock, discloses that the proposed dock met or exceeded CRMC's specifications and requirements. (Tr. at 50, 59.) The report of CRMC's engineer corroborates the opinion of Mr. Cherenzia, with the exception that CRMC's engineer noted the Town's representation that the dock was within 10 feet of a mooring area.
The majority of the testimony and discussion on the record related to the requirement that a dock be located 50 feet from an approved mooring field, and also to attempts at fixing the boundaries of the mooring field which exists at some undetermined distance from Pellegrino's proposed dock. The CRMC relied on CRMP Section 300.4.E.3. 1, which regulates the distance between residential docks and mooring fields. That section provides in pertinent part:
 (1) All residential docks, piers and floats shall meet the setback policies and standards contained in municipal harbor management plans and/or harbor ordinances approved by the Council. However, in all cases residential docks, piers and floats shall be set back at least 50 feet from approved mooring fields . . . ." (Emphasis added.)
Pellegrino argues that this section is inapplicable and cannot be enforced by the CRMC in this case because the boundaries of the mooring field have not been identified by the Town and because the CRMC has not approved either the Town's harbor management plan or its harbor ordinances. Pellegrino's argument is meritorious.
The CRMC requires all municipalities preparing to implement harbor management rules, regulations or plans relating to structures and activities in tidal waters to apply to CRMC for a determination of consistency in order to assure compliance with the CRMP, the Guidelines for the Development of Municipal Harbor Management Plans, and the Rhode Island General Laws. CRMP Section 300.4.B.4. The regulations further provide that an application for CRMC assent for a mooring area will include a map prepared and stamped by a professional engineer, land surveyor, or architect. The Town's ordinances also require the Town to prepare maps that delineate mooring fields. Code of Ordinances, Town of North Kingstown, ch. 7.77; (Tr. at 23-124.) The record indicates that the Town's proposed harbor management plan has not been approved by CRMC. (Tr. at 22, 30.) It also discloses that the CRMC has not approved any mooring fields in the Town. (Tr. at 114-115.) Furthermore, neither the proposed harbor management plan nor the Town's harbor ordinances include maps which delineate the boundaries of any of the seventeen mooring areas existing in the Town's waters, including that which exists somewhere beyond Pellegrino's proposed dock. (Tr. at 75, 102-103, 104, 114-115.)
At the hearing, the harbormaster testified that the Town does not yet have maps delineating any of the mooring fields. (Tr. at 75.) He further testified that the Town was in the process of having the existing mooring areas surveyed, and that the map contained in the Town's proposed harbor management plan showing the location of mooring areas showed approximate locations only. (Tr. at 75, 102-103, 116.)
The language of CRMC section 300.4.E.3.1 is clear: it presupposes an approved harbor management plan, approved harbor ordinances and approved mooring fields. Unapproved plans, harbor ordinances, or mooring fields do not assure compliance with the CRMP, the Guidelines for the Development of Municipal Harbor Management, or the pertinent General Laws. See CRMP Sections 300.4.B.4 and 300.15. To interpret this section to apply to unapproved mooring fields, plans or ordinances is countervailing to the purposes and policies of the enabling statute and the CRMP. The CRMP requires approval, and the CRMC is bound by its own regulations. See Ratcliffe v. Coastal Resources ManagementCouncil, 584 A.2d 1107, 1110 (R.I. 1991).
The record demonstrates the necessity of definitive reference points relating to the mooring fields before the CRMC, or indeed any applicant seeking a permit to construct a dock, can reasonably determine whether the 50 foot setback has been met. The harbormaster initially represented to the Town which, in turn, represented to the CRMC, that the dock came within 10 feet of the mooring field. At the CRMC hearing, however, the harbormaster testified that the 10-foot proximity was incorrect, and that the dock was farther away from the mooring field. (Tr. at 108.) He further testified that the approximate boundary of the mooring field was a rock located about 40 feet from the proposed float. (Tr. at 108, 145.). He was estimating. Mr. Cherenzia testified that the rock was located 30 feet from the float. (Tr. at 132.) The harbormaster testified also that under the Town's proposed harbor management plan, the Town was proposing a mooring field located 100 feet beyond mean low water in the area of the proposed dock. (Tr. at 78-79.) Pellegrino's dock, extending 40 feet beyond mean low water, would then be 60 feet from the mooring field. In the absence of any maps delineating the parameters of the mooring field, Pellegrino's professional engineering expert, who is also a registered land surveyor, located 9 actual moorings using winter stakes, and measured distances from various points. He testified that the closest mooring to the proposed dock was Pellegrino's mooring which was located 169' away from the float. (Tr. at 37.) The harbormaster testified that the swing radius of Pellegrino's boat from the mooring was approximately 58 feet (Tr. at 108.) This clearly is more than 50 feet from the proposed dock.
Despite these efforts, the boundaries from which a 50 foot setback could be measured were not established. Moreover, the record is devoid of any finding by the CRMC establishing the boundaries of the mooring area. The record was insufficient for the CRMC to make a reasonable determination that Pellegrino's dock was within 50-feet of a mooring field. There was evidence before the CRMC that the 10' proximity was incorrect. There was also evidence before the CRMC that the boundary of the mooring area was 30 feet or 40 feet or 60 feet from the proposed dock. (Tr. at 114, 132, 158.) The Court is unable to see how the CRMC could draw a reasonable and supportable conclusion about whether Pellegrino met the 50-foot setback without certified, detailed surveys in this case. The CRMC was reaching conclusions involving 10 to 30 foot margins of error. This degree of precision would suggest to a reasonable decision maker that the risk of error warranted the use of certified surveys to establish the parameters of the applicable mooring field before a determination could be made as to whether the proposed dock satisfied the setback requirements. The difficulty presented here illustrates the necessity of CRMC- approved harbor management plans, harbor ordinances and mooring fields for the enforcement of CRMP 300.4.E.3.1, as approval by the CRMC would be premised on, among other factors, the required maps professionally developed by registered surveyors, architects or engineers. The decision of the CRMC was arbitrary and capricious and further, prejudiced the rights of Pellegrino.
For the reasons stated, Pellegrino's appeal is sustained, and the decision of the CRMC is vacated. This matter is remanded to the CRMC with instructions to issue an assent to Pellegrino for the construction of the proposed dock consistent with this decision and subject to Pellegrino's stipulations on this record that a stairway and walk-over be provided to maintain lateral access along the shoreline, and that the dock be constructed without the two tie-off piles beyond the float.
This Court also finds that the agency was substantially justified in its actions in this matter involving a mooring field, the boundaries of which had never been established. Accordingly, Pellegrino's request for attorney's fees is hereby denied.
Counsel shall prepare an order consistent with the Court's decision.