DECISION
Plaintiff Kevin M. Sheehan is before this Court seeking review of a decision of the Employees' Retirement Board of the State of Rhode Island in which the Retirement Board reversed a decision of a hearing officer and determined that his prior wages that are at issue in this litigation do not constitute pension-eligible compensation. For the reasons set forth in this Decision, this Court reverses the decision of the Retirement Board and remands this matter to the Board for further proceedings consistent with this Decision.
 FACTS AND TRAVEL
At all times relevant to this appeal, plaintiff Kevin M. Sheehan was the principal of South Kingstown High School. Tr. 28-29. In early 2002, Sheehan entered into a two-year Agreement Regarding Salary and Benefits with the South Kingstown School Department. The Agreement set forth the salary and benefits Sheehan would receive for the period from July 1, 2001 until August 31, 2003 in consideration for his service as principal. Agreement at 1. Sheehan's salary was set at $89,157 for the twelve month period between July 1, 2001 and June 30, 2002, during which time he was required to work 210 days. Id. The Agreement provided that "Mr. Sheehan's salary will be adjusted if more days are required over the contracted 210 days." Id.
Sheehan also was entitled to fifteen days of sick leave per year, and, in addition to school vacations, he was entitled to twenty days of vacation per year, to be taken "only during the months of July and August." Id. The Agreement further provided that Sheehan would be compensated at the per diem rate specified in his contract for unused vacation days. Id. In addition, Sheehan was entitled to thirteen paid holidays on the dates designated as school holidays. Id.
It is not disputed that between July 1, 2001 and August 21, 2001, Sheehan worked nineteen days that were neither school days nor school holidays and for which Sheehan was entitled to be paid at the per diem rate specified in the contract. Sheehan v.Employees' Retirement System of Rhode Island, at 4 (ERSRI, May 18, 2003) (hereinafter Dec. of Hr'g Off.). The issue in the present controversy is whether compensation for those nineteen days, worked in a period during which Sheehan could have taken vacation, should be considered (1) salary or wages earned and paid for the performance of duties for covered employment, (2) pay for unused vacation time or (3) pay for temporary or extra duties beyond the normal or regular work day or work year. Consonant with the provisions of R.I. Gen. Laws § 36-8-1, if the pay for the disputed days is found to be payment for the performance of duties for covered employment (category 1), then the parties agree that Sheehan would be entitled to contribution to his retirement fund based on those wages; if instead the compensation is deemed to be payment for overtime or reasons other than performance of duties or activities, including payments made at termination for unused vacation leave (category 2) or additional payment for performing temporary or extra duties beyond the normal or regular work day or work year (category 3), then the parties agree that it is not pension-eligible compensation.
Sheehan contends that on the nineteen extra days that he worked, he was performing the normal duties of his job, which duties required him to work more than the required 210 days specified in his contract, such that the salary or wages that he earned for those days were for "the performance of duties for covered employment" and thus compensation that is pension-eligible. The ERSRI admits that Sheehan is due per diem compensation for those nineteen days, but argues that it is not pension-eligible pay because it constitutes either payment made for unused vacation days or for extra duties beyond his normal work day or work year.
The correspondence in the record evidences that, at the outset, there was considerable confusion among the plaintiff, the Town of South Kingstown, the South Kingstown School Department, and the Employees' Retirement System of Rhode Island ("ERSRI") regarding how to characterize the subject wages and whether such wages were pension-eligible. See Ltr from Stephen M. Robinson to John M. Harrington dated February 11, 2002; Ltr from Alan R. Lord to Frank Karpinsky dated March 15, 2002; Ltr from Stephen M. Robinson to Diane Bourne of ERSRI dated April 9, 2002; Seealso Memo. from Alan R. Lord to Jack Harrington dated April 16, 2002. In an April 5, 2002 letter to Alan R. Lord, the Town Finance Director of South Kingstown, Kerry Walsh, a policy analyst with the ERSRI, indicated that the wages were considered payment for unused vacation time and that "unused vacation time was not to be considered as compensation and therefore no retirement contributions were to be deducted. [R.I. Gen. Laws] §36-8-1 clearly and unambiguously states that `[c]ompensation . . . shall mean salary and wages earned and paid for the performance of duties. . . .'" See Ltr from Kerry Walsh to Alan Lord dated April 5, 2002. Stephen Robinson, legal counsel to the South Kingstown School Department, replied to this letter, stating that, in his opinion, the payments made to Sheehan were not for unused vacation time but constituted "wages for actual work done," and therefore fit within the statutory definition of compensation. See Ltr from Robinson to Walsh dated April 22, 2002. Walsh replied that the opinion of the ERSRI was that, even if the wages did not constitute payment for unused vacation time, Sheehan's work during the vacation period qualified as "extra duties beyond the normal or regular work day or work year" such that any wages paid for such "extra duties" were not pension-eligible. See Ltr from Walsh to Robinson dated April 24, 2002.
Several weeks later in unrelated correspondence, Jack Harrington, the Superintendent of the South Kingstown School Department, authorized payment to Sheehan for "unused vacation days from July 1, 2001 through August 30, 2002," per the Agreement. See Memo. from Harrington to Maria Rix dated June 10, 2002. On June 20, 2002, Frank Karpinski, Executive Director of the ERSRI, wrote to Sheehan officially denying his request that the subject wages be considered contributory for retirement purposes, notifying him of his right to appeal the denial within thirty days of receipt of the letter, and warning that failure to strictly comply with appellate procedures would be "grounds to deny" a request for a hearing. See Ltr from Karpinski to Sheehan dated June 20, 2002. Karpinski's instructions mirror the provisions of the ERSRI Regulations which provide that if a party wishes to appeal an administrative decision:
 (b) Such request shall be in writing and shall be sent to the Retirement Board within thirty (30) days after receipt of the administrative or sub-committee decision.
 (c) A request for hearing shall be signed by the member and shall contain the following information:
(1) Name of member;
(2) Date and nature of decision being contested;
 (3) A clear statement of the objection to the decision; and
(4) A concise statement of relief sought.
. . . .
 (e) Failure to strictly comply with the procedures outlined in this Section shall be grounds to deny any request for hearing.
ERSRI Regulation § 3.00 (b), (c), and (e).
Within thirty (30) days after Karpinski issued his denial, Robinson wrote to Walsh at the ERSRI requesting reconsideration.See Ltr of Robinson to Walsh dated July 10, 2002. Walsh replied on July 12, 2002 that if Sheehan wanted to pursue the matter further, then counsel should "have Mr. Sheehan put his request in writing, sign it and address it to Frank J. Karpinski, Executive Director." See Ltr from Walsh to Robinson dated July 12, 2002. The letter did not specifically reference the final decision or set forth any deadline for filing a hearing request, but it did say that, upon such written request, Sheehan would be "one step closer to an administrative hearing." Id. Robinson promptly directed a missive to Karpinski, referencing Walsh's letter dated July 12, 2002, requesting again that the ERSRI reconsider its earlier decision not to consider the subject wages pension-eligible. See Ltr from Robinson to Karpinski dated July 16, 2002. On July 22, 2002, Walsh then sent a second letter to Robinson indicating that the thirty-day appeal period had passed and that the ERSRI's position had not changed. See Ltr to Robinson from Walsh dated July 22, 2002.
On July 23, 2002, Robinson wrote to Paul Tavares, Chairman of the Retirement Board, enclosing a request for hearing from Sheehan and entering his appearance as counsel. See Ltr from Robinson to Tavares dated July 23, 2004. Karpinski responded not by denying Sheehan's request for a hearing on the grounds that it was untimely filed, but by notifying Sheehan by certified letter that his request for a hearing had been assigned to a hearing officer for hearing on September 11, 2002. See Ltr from Karpinski to Sheehan dated July 30, 2002; Notice of Hr'g dated August 23, 2002. Hearings took place on September 11, 2002, October 3, 2002, and January 23, 2003. See Dec. of Hr'g Off. at 1. Sheehan, Harrington, and Stephen Mueller, a member of the South Kingstown School Committee, testified on behalf of the plaintiff; Karpinski testified for the ERSRI.
On May 18, 2003, the hearing officer affirmed in part and reversed in part the administrative denial of the ERSRI dated June 20, 2002. The hearing officer addressed two issues in his decision: first, the procedural issue of whether he had jurisdiction over the appeal based on the ERSRI's claim that the plaintiff's request for a hearing violated ERSRI Reg. § 3.00; and second, the substantive issue as to whether the disputed wages should be considered contributory for purposes of the plaintiff's pension.
The ERSRI argued before the hearing officer that Sheehan's request for an administrative hearing was not timely filed because he failed to file his request for hearing (dated July 23, 2002) within 30 days of the ERSRI's denial (dated June 20, 2002), as allegedly required by the regulations. The hearing officer concluded that Sheehan's failure to strictly comply with the time strictures of ERSRI Regulation § 3.00 did not, as the ERSRI argued, deprive him of jurisdiction over the plaintiff's appeal.
The hearing officer found that the language in that regulation stating that "[f]ailure to strictly comply with the procedures outlined in [§ 3.00 of the ERSRI Regulations] shall be groundsto deny any request for hearing" authorized denial of the request for a hearing, but did not mandate it. See Dec. of Hr'g Off. at 11; see also ERSRI Reg. § 3.00 (e), supra (emphasis added). In addition, the hearing officer found that Sheehan's failure to strictly comply with the regulation was a moot point, given that his request for a hearing had been granted. See Dec. of Hr'g Off. at 11; Letter from Karpinski to Sheehan dated July 30, 2002. In the alternative, the hearing officer found that even if Sheehan's failure to strictly comply with ERSRI Reg. § 3.00 should have deprived him of jurisdiction, the ERSRI's June 20, 2002 notice of its formal denial of Sheehan's request was not legally effective because Sheehan's attorney was not copied on the notice and should have been. Id. at 12. As a third alternative, the hearing officer found that Robinson's letter to Karpinsky dated July 16, 2002 did constitute a timely request for a hearing, notwithstanding several technical failings. Id.
Finally, the hearing officer concluded that because Sheehan had not yet been paid for the nineteen days at issue, the question of whether the funds were pension-eligible was not yet ripe; Sheehan thus had received only an advisory opinion from the ERSRI such that his request for a hearing was early, not late. Id. at 13.
As to the merits of the controversy, the hearing officer began with an analysis of R.I. Gen. Laws § 36-8-1, the controlling statute that defines when salary and wages are to be considered compensation for purposes of the computation of pension benefits. The statute defines compensation, in pertinent part, as follows:
 (7) "Compensation". . . shall mean salary or wages earned and paid for the performance of duties for covered employment . . ., but shall not include payments made for overtime or reasons other than performance of duties or activities, including but not limited to the types of payments listed below:
. . . .
 (ii) Payments made at termination for unused sick leave, vacation leave or compensatory time;
. . . .
 (v) Additional payments for performing temporary or extra duties beyond the normal or regular work day or work year.
R.I. Gen. Laws § 36-8-1 (7) (ii), (v).
He determined, and the parties do not dispute that, to the extent Sheehan's disputed wages were earned for the performance of duties for covered employment, they are pension eligible and, to the extent his disputed wages were payments for duties beyond the normal or regular work day or work year, they are not pension eligible. See Dec'n of Hr'g Off. at 14-15. He further found that the statute did not expressly exclude payment for unused vacation days from the definition of "compensation" (except where payment for unused vacation leave was made upon termination).Id. at 14. He recognized that Sheehan could be correct, therefore, that the disputed wages, even if paid at the contractual per diem rate for unused vacation days, could constitute pension-eligible compensation under the contract.Id. Notwithstanding the language of the statute, however, the hearing officer ultimately deferred to the ERSRI's interpretation of the statute as excluding payment for unused vacation days for purposes of calculating a retirement pension, regardless of whether payment for those days was provided by contract. Id.
(citing Defenders of Animals, Inc. v. Dep't of EnvironmentalMgmt., 553 A.2d 541 (R.I. 1989); Pawtucket Power AssociatesLtd. Partnership v. City of Pawtucket, 622 A.2d 452 (R.I. 1993)).
In applying this interpretation of the statute to Sheehan's case, the hearing officer began with an analysis of Sheehan's contract. Id. at 15. After reciting its core provisions, he summarized it as specifying "that the salary is set based upon a `contracted' 210 days, with additional pay to be made for days over the `contracted' number of days at an effective per diem
rate." Id. at 16 (citations to record omitted). He noted that the parties to the contract, as testified to by Sheehan and Harrington, agreed that "the genesis of this contractual arrangement was the fact that the necessary work in a given year could not be accomplished within the presumptive 210 days upon which the salary was based." Id. (citations to record omitted). "Given this situation, the parties to the contract agreed that Sheehan should be paid additional money where the normal and required duties of the job required in excess of the 210 days upon which the fixed salary was based." Id.
The hearing officer stated that Sheehan effectively treated the 210 days as a minimum salary figure in his contract, arguing that whatever additional salary he received under his contract (whether for unused vacation time or otherwise) would be for "the performance of duties for covered employment" and thus pension eligible. Id. The ERSRI, on the other hand, took the position that all pay Sheehan received in excess of his salary for the 210 days "contracted" for constituted pay for unused vacation time or for work over and above the normal work of the job and hence was not pension-eligible. Id. The hearing officer rejected both of these contentions and carved out the middle ground, concluding that Sheehan would be entitled to include, as pension-eligible compensation, monies earned for work days beyond the 210 day minimum number of work days stated in the contract — as additional work days were contemplated under his contract as necessary work that could not be accomplished within the 210 days upon which the base salary was established — as long as those days could not be characterized as unused vacation days. Id. at 16-18. He found that payment for days worked in excess of 210 days would not be payment for extra duties beyond the normal year's work but would be payment for days that were part of the regular work year because the contract reflects "knowing negotiation of additional pay for additional days of work." Id.
at 18.
The hearing officer reasoned that:
 "Because the number of paid vacation days, holidays and school vacations is fixed, and because the per diem aspect of Mr. Sheehan's presumptive work year is fixed at 210 days, there appear to be some number of weekdays during the year which are accounted for neither as vacation days nor among the 210 "contracted" for workdays. . . . Payment for work on those days, I conclude, is pension-eligible compensation and, under the facts presented, represents work which is part of the normal, covered employment and regular work year."
Id. at 18.
The hearing officer thus determined that the nineteen days at issue could consist of extra work days that were part of the regular work year, unused vacation days or both. As neither party had presented evidence of which particular days Sheehan had worked, however, the hearing officer could not determine exactly how much of the disputed wages were pension-eligible. Id. at 20. The hearing officer thus directed the parties to apply his analysis to determine what part, if any, of the disputed wages was pension-eligible compensation. Id.
The ERSRI appealed the decision of the hearing officer to the Retirement Board, arguing that he erred in determining that Sheehan might be entitled to have additional wages classified as pension-eligible. The ERSRI continued to maintain that all of Sheehan's disputed wages should not be considered contributory for purposes of calculating his pension. Sheehan sought to have the Retirement Board affirm the hearing officer's decision with a possible remand to the ERSRI for recalculation of his pension-eligible compensation in accordance with that decision.
The eleven members of the Retirement Board held a hearing on July 9, 2003 to review the hearing officer's decision. See
ERSRI Hr'g Tr. dated July 9, 2003. The hearing consisted of approximately 30 minutes of oral argument by counsel for the parties and a statement by Sheehan. Id. The record reflects that the Retirement Board members were provided with the record, with the important exception of the parties' legal briefs filed with the hearing officer. Id. at 13-14. It is unclear from the record whether the members of the Retirement Board reviewed the portion of the record with which they were provided. Id. One Board member focused on the key language of the contract that said Sheehan's salary would be adjusted if more days were required over the contracted 210 days and questioned who authorized that contractual provision. Id. at 16.
Following the arguments, the Chairman of the Retirement Board then made a statement that the Retirement Board is bound by the statutes that govern the retirement system and cannot employ equitable powers and that the hearing officer's decision, in his view, "deviates from even those authorities that are vested."Id. at 21. He proclaimed that the issue was a systemic one, that sustaining the hearing officer's decision "would be contrary to the governance of the agency," and informed the members of the Retirement Board that he would be voting to overturn the hearing officer's decision and that an appeal to the Superior Court would be the appropriate venue if there remained disagreement with the Retirement Board's decision. Id. at 21-22. Almost immediately thereafter, another Retirement Board member moved to overturn the decision of the hearing officer, arguing that teachers and guidance counselors in other districts may get paid for extra days worked but that they do not count toward their pension.Id. at 23-24. The motion carried by a majority vote of the Retirement Board. Id. at 24.
The Retirement Board sent a letter to Sheehan on July 10, 2003 advising him of its decision, stating:
 At its July 9, 2003 Retirement Board meeting, the Board voted to reject the hearing officer's decision.
 Should you not agree with the decision of the Retirement Board, you may seek judicial review by filing a complaint in the Rhode Island Superior Court within 30 days of receipt of this notice.
See Ltr to Sheehan dated July 1, 2003.
The plaintiff timely filed the instant appeal in the Superior Court on July 28, 2003.
 STANDARD OF REVIEW
A Superior Court's review of a decision of the Retirement Board is governed by the Administrative Procedures Act, R.I. Gen. Laws 1956 §§ 42-35-1 et seq. The applicable standard of review is codified, as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I.Gen. Laws § 42-35-15.
When acting pursuant to § 42-35-15, the Superior Court sits as an appellate court. Mine Safety Appliances Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). The Superior Court is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Assoc., Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v.Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138
(R.I. 1992)); see also R.I. Gen. Laws § 42-35-15(e). If the agency decision is based on competent evidence in the record, the reviewing court must affirm the agency's decision. Nolan,755 A.2d at 805 (citing Barrington Sch., 608 A.2d at 1138).
The agency in this case utilizes a two-tier review process, in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Retirement Board. The Board considers the decision, along with any further briefs or arguments, and renders its own decision. ERSRI Reg. § 10.00(a). This two-step procedure has been likened to a funnel.Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 207-08
(R.I. 1993). The hearing officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. The Board, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the hearing officer first hand. Id. The Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
"Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation [or, by analogy, an agency rule adopted pursuant to an enabling statute] is a question of law to which [the courts] apply de novo review." Rossi v. Employees'Retirement System of the State of Rhode Island, C.A. No. 2004-364 M.P. (R.I. Supreme Ct. April 13, 2006), slip op. at 5 (citing In re Advisory Opinion to the Governor, 732 a.2d 55, 60 (R.I. 1999); City of East Providence v. Public UtilitiesCommission, 566 A.2d 1305, 1307 (R.I. 1989)). The courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v. Rhode IslandDep't of Labor and Training Bd. of Review, 822 A.2d 164, 169
(R.I. 2003) (citing In re Lallo, 768 A.2d 921, 926 (R.I. 2001)); see also Lyman v. Employees' Retirement System ofthe State of Rhode Island, 693 A.2d 1030, 1031 (R.I. 1997). As such, the courts remain the final arbiters of questions of construction of statutes or agency rules. Rossi, C.A. No. 2004-364 M.P. (R.I. Supreme Ct. April 13, 2006), slip op. at 5.
 REVIEW OF THE DECISION OF THE RETIREMENT BOARD Jurisdiction
Before this Court can reach the merits of the Retirement Board's decision, it must consider the ERSRI's jurisdictional arguments. The ERSRI argues here, just as it did before the hearing officer and the Retirement Board, that the hearing officer lacked subject matter jurisdiction over this administrative appeal, as Sheehan filed an untimely appeal from the ERSRI's decision to the Retirement Board that should have resulted in dismissal of the matter by the hearing officer on grounds of lack of jurisdiction. It contends, therefore, that the Retirement Board's decision to reverse the decision of the hearing officer should be upheld by this Court for that reason alone.[1]
Sheehan contends that the hearing officer was correct in rejecting the ERSRI's claim of lack of jurisdiction. He suggests that the Retirement Board, too, implicitly rejected the ERSRI's jurisdictional arguments because it did not discuss the issue at the hearing and made no findings of fact or conclusions of law as to the absence of jurisdiction in its decision. As the question of jurisdiction is largely one of law (or law applied to the record facts) that is reviewed de novo by this Court,[2]
and as the issue of jurisdiction can be raised at any time,[3] this Court will proceed to address the question, notwithstanding the Retirement Board's failure to address the jurisdictional issues put before it on appeal.
In contesting jurisdiction here, the ERSRI relies on its regulations which state that an appeal and request for hearing "shall be sent to the Retirement Board within thirty (30) days after receipt of the administrative or sub-committee decision." ERSRI Reg. § 3.00 (b). The ERSRI contends that Sheehan filed an appeal and request for hearing concerning the ERSRI's decision on July 23, 2004 (see Ltr from Robinson to Tavares dated July 23, 2002) — more than thirty (30) days past the June 20, 2002 date on which the ERSRI issued its administrative denial (see Ltr from Karpinski to Sheehan dated June 20, 2002) — so as to make that appeal and request for hearing untimely under ERSRI Regulation § 3.00 (b). It argues, therefore, that the hearing officer lacked jurisdiction to hear the matter because of the mandatory language of ERSRI Regulation § 3.00 (e) that dictates that "[f]ailure to strictly comply with the procedures outlined in [Regulation § 3.00] shall be grounds to deny any request for hearing."
This Court does not read ERSRI Regulation § 3.00 (e), however, as requiring denial of a hearing request that is not filed with the Retirement Board within thirty (30) days after receipt of an administrative decision. While that regulation certainly requires that such a request be made within thirty (30) days and empowers the Retirement Board to deny an untimely hearing request, its provision that an untimely filing "shall be grounds to deny" a hearing request suggests, as the hearing officer found, that the Retirement Board is given discretion in determining whether the consequence for an untimely filing shall be denial of a hearing. It could be argued that the Retirement Board exercised that very discretion by assigning the matter to a hearing officer and allowing the appeal to go to hearing. ERSRI Regulation § 3.00, by its express terms, does not therefore make a timely appeal filing a mandatory predicate to the Retirement Board assuming jurisdiction over that appeal and assigning a hearing officer to hear and decide the case on its merits.
Moreover, even if ERSRI Regulation § 3.00 could be read as imposing a mandatory time period for filing an appeal that is jurisdictional, there is no evidence in this case that Sheehan failed to file a timely appeal. ERSRI Regulation § 3.00 requires that the request for hearing be sent to the Retirement Board within thirty (30) days of receipt of the adverse administrative decision. While it could be inferred that Sheehan sent his request for a hearing to the Retirement Board on July 23, 2002, as that is the date of his counsel's letter to the Board requesting a hearing, there is no evidence in the record to indicate on what date the plaintiff actually received the letter dated June 20, 2002 that notified him of the ERSRI's administrative denial. The absence of notice to his counsel complicates this issue. There is thus no way to determine from the record the date on which the thirty (30) day clock would have begun to run and consequently no basis upon which to determine that his July 23, 2002 hearing request was untimely. The ERSRI failed to create a record below that would allow for this conclusion.
In addition, there were intervening events between the date of the ERSRI's administrative decision (dated June 20, 2002) and the date of the request for hearing by Sheehan (dated July 23, 2002) that it appears would have stopped the running of any appeal clock after Sheehan's receipt of the decision. Before filing his appeal and request for hearing, and within thirty (30) days from the initial decision date, Sheehan asked the ERSRI to reconsider its decision. See Letter of Robinson to Walsh dated July 10, 2004. The ERSRI responded to that request by letter dated July 12, 2002, asking Sheehan to forward a request for reconsideration to the Executive Director of the ERSRI. See Ltr from Walsh to Robinson dated July 12, 2002. Sheehan made that request of the Executive Director by letter dated July 16, 2002, again within thirty (30) days of the initial decision date. See Ltr from Robinson to Karpinski dated July 16, 2002. Only after thirty (30) days from the decision date, on July 22, 2002, did the ERSRI notify Sheehan's counsel that the thirty-day appeal period had passed and that the ERSRI's position had not changed. Ltr to Robinson from Walsh dated July 22, 2002.
This evidence suggests that any appeal period did not begin to run until Sheehan received notice that the ERSRI had denied his request for reconsideration. See R.I. Gen. Laws § 42-35-15. (thirty (30) day appeal period runs from date of decision on party's request for rehearing). There is nothing in the ERSRI's regulations that precludes such a conclusion. After all, had that request for reconsideration been granted and the original decision of the ERSRI been reversed, there would have been no need for Sheehan to take an appeal from the decision of the ERSRI to the Retirement Board. Thus, even if the thirty (30) day appeal period is deemed to have commenced on June 20, 2002, or shortly thereafter, it would not have expired as of the time, following the denial of his request for reconsideration, that Sheehan filed his July 23, 2002 appeal and request for hearing before the Retirement Board.
While the ERSRI wants this Court to find that the hearing officer lacked jurisdiction to hear Sheehan's appeal from its administrative decision because it was untimely filed, it never made such a claim before Sheehan filed the appeal. Indeed, its letter of July 22, 2002 to Sheehan denies reconsideration and references the appeal timeframe but does not assert that Sheehan is at that point without any right to appeal. See Ltr from Walsh to Robinson dated July 22, 2002. Furthermore, the letter sent by the ERSRI's Executive Director to Sheehan thereafter, following Sheehan's filing of an appeal and request for hearing, does not deny plaintiff a right to hearing for lack of timely filing of the appeal, but instead grants him his right to a hearing and assigns the matter to a hearing officer. See Ltr from Karpinski to Sheehan dated July 30, 2002. The formal notice of hearing says nothing to the contrary. See Notice of Hr'g dated August 23, 2002. It necessarily follows, therefore, that the ERSRI determined, consistent with the conclusion of the hearing officer, presumably the Retirement Board and this Court, that Sheehan's appeal was not untimely under its own regulations (or at least that it had no basis to reach a contrary conclusion).
Moreover, as the hearing officer found, Sheehan had yet to be paid any earnings for the additional days that he claimed he worked under his contract at the time of the administrative denial. As such, his appeal could be deemed premature as opposed to untimely.
For all of these reasons, the ERSRI cannot successfully challenge the decision of the hearing officer (and seek to uphold the decision of the Retirement Board) on grounds of lack of jurisdiction. This Court must proceed, therefore, to review the Retirement Board's decision on its merits to determine if it can withstand scrutiny on appeal.
 The Merits of the Appeal
Plaintiff Sheehan argues on appeal that the Retirement Board violated § 42-35-12 of the Administrative Procedures Act when it rejected the hearing officer's decision. That statutory provision requires that:
 Any final order adverse to a party in a contested case shall be in writing or stated in the record. Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.
R.I. Gen. Laws § 42-35-12.
The Board responds that its decision complies with the requirement of § 42-35-12 that the final order ". . . shall be in writing or stated in the record," and therefore should be affirmed. Id. (Emphasis in original.) Def. Mem. at 15.
It is true that the Retirement Board's final order reversing the decision of the hearing officer is clearly stated in the record and readily ascertainable by a glance at the hearing transcript. Tr. July 9, 2003 at 24. To that extent, therefore, the Retirement Board met the first statutory requirement set forth in § 42-35-12. It is also quite clear, however, that the Retirement Board has quoted selectively from the provisions of that statute governing the form and content of administrative orders, disregarding its requirement that the final order contain "findings of fact and conclusions of law, separately stated." §42-35-12. In addition to and consistent with § 42-35-12, the ERSRI Regulations require that "[a]fter consideration of the decision of the Hearing Officer and such other matters as shall be presented by counsel for any party to the proceedings, the Retirement Board shall make a decision, which decision shall contain a clear and concise statement of the facts and the legal conclusions." ERSRI Reg. § 10.00(a). The Retirement Board here ignored both the legal requirements of § 42-35-12 and its own agency rules in rendering its decision, as it failed to make any of the required findings of fact and conclusions of law to support its decision.
This Court is not required to "search the record [of the hearing before the Retirement Board]" to try to discern its factual findings or legal conclusions or to decide itself "what is proper in the circumstances." Cranston Print Works Co. v.City of Cranston, 684 A.2d 689, 692 (R.I. 1996) (citing Hooperv. Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968)). Nonetheless, this Court has examined the record in an attempt to ascertain the Retirement Board's rationale for overturning the thorough, reasoned decision of the hearing officer, but to no avail. Not even a careful reading of the hearing transcript provides insight. The Chairman of the Retirement Board, for example, expressed the opinion that:
 The hearing officer's decision deviates from even those authorities that are vested. And I believe that the hearing officer, in fashioning his decision, went beyond what is applicable. So it is not a personal issue, but a systemic issue that I believe that to sustain that hearing officer's decision would be contrary to the governance of the agency.
Tr. July 9, 2003 at 21.
Yet he did not identify how the decision deviated from authorities that are vested nor did he explain how, in his view, the hearing officer's decision created a systemic issue and contravened the governance of the agency. He cited to no evidence or law to support his conclusory statements. Another member of the Retirement Board expressed his disagreement with Sheehan's contention that the Retirement Board was not treating him like other, similarly situated employees. Id. at 24. Yet this speaker, like the Chairman, alluded to no evidence in the record or authorities to support his view. Indeed, he made reference to matters outside the record. These are the only statements indicating any possible rationale for any Retirement Board members' votes to overturn the hearing officer's decision. It is not clear from the Retirement Board's decision, therefore, whether all of the members of the Retirement Board who rejected the hearing officer's decision did so for similar reasons, thereby leaving this Court to wonder whether the decision of the Retirement Board even reflected a majority view as to the grounds for reversal. More importantly, even if a majority of the members of the Retirement Board premised a decision on the reasons stated by these two members of the Retirement Board, those reasons are not clear to this Court, are not supported by the record, appear to rely on matters outside the record, and fail to indicate, as required, how the hearing officer erred as a matter of fact and/or law, if at all.
Our Supreme Court has held that "the absence of required findings makes judicial review impossible, clearly frustrating [R.I. Gen. Laws] § 42-35-15." East Greenwich Yacht Club v.Coastal Resources Mgmt. Council, 118 R.I. 559, 569,376 A.2d 682, 687 (1997) (holding that a conclusory agency decision failed to meet the requirements of § 42-35-12). The agency "must do more than make a motion and take a vote." Cranston Print Works Co.,684 A.2d at 691. The Retirement Board's decision in the present case consists only of a motion and a vote; the "decision of the [Retirement Board] is bereft of any factfinding" or any conclusions of law. East Greenwich Yacht Club, 118 R.I. at 569,376 A.2d at 687. This Court finds, therefore, that the Retirement Board has failed to comply with the requirements of § 42-35-12. Its decision violates the mandates of this statutory provision and hence is infected by error of law. R.I. Gen. Laws §42-35-15(g)(1), (4). Those infirmities in the Retirement Board's decision alone preclude this Court from affirming that decision.
The remaining question, therefore, is whether this Court should remand this case to the Retirement Board, as suggested by the ERSRI, so that it may make additional findings of fact and conclusions of law or whether instead, as Sheehan suggests, the Retirement Board's decision should be reversed outright.Sakonnet Rogers, Inc. v. Coastal Resources Management Council,536 A.2d 893, 897 (R.I. 1988) (declining to remand case back to CRMC and instead reversing its decision where agency based its decision on irrelevant factors and overlooked or ignored relevant testimony) with Cf. East Greenwich Yacht Club v. CoastalResources Management Council, 376 A.2d 682, 687 (R.I. 1977) (remanding case back to CRMC when it may have based its decision on relevant factors but failed to include any basic findings in its decision so it could make findings of fact and conclusions of law necessary for judicial review). This Court is of the view in this case that reversal is the appropriate remedy.
Under R.I. Gen. Laws § 42-35-15(g)(6), this Court "may reverse . . . the decision if . . . the administrative . . . decision [is] . . . arbitrary or capricious of characterized by abuse of discretion or clearly unwarranted exercise of discretion." Here, the hearing officer rendered a comprehensive and well-reasoned decision that not only is supported by the language in Sheehan's contract and the related evidence in the record but reflects a correct application of the controlling statute, R.I. Gen. Laws §36-8-1, and the agency's interpretation of it, to the contract at issue. The hearing officer's decision stands as a model of administrative fact finding and the application of law to the facts as found. This Court has reviewed that decision as well as the evidentiary record that preceded it (as outlined previously in the section of this Decision entitled "Facts and Travel") and finds no error in its analysis of the merits of Sheehan's appeal. While a different contract might yield a different result, the hearing officer's analysis of Sheehan's contract appears appropriate.
The decision of the Retirement Board, such that it is, stands in marked contrast to the comprehensive and well-reasoned decision of the hearing officer. It does not take issue with the hearing officer's extensive findings of fact, it does not even mention the language of the controlling statute (R.I. Gen. Laws §36-8-1) or the language of Sheehan's contract at issue, and it certainly does not apply the law to the contract and the related evidence of record to show how the hearing officer erred. The Retirement Board is required, by the dictates of our Supreme Court, to defer to the judgment of the hearing officer absent any clearly erroneous fact finding, abuse of discretion or error of law in his decision; yet the Board has failed, based on the record of this case below, to identify or explain any such error.See Environmental Scientific Corp., 621 A.2d at 208. Since the evidence adduced in the hearing before the hearing officer and his reasoning was not mentioned in any way by the Retirement Board in its decision, this Court "can only conclude that it was overlooked or ignored." Sakonnet Rogers, Inc., 536 A.2d at 897.
In addition, in the course of preparing to vote to overturn the decision, members of the Board telegraphed a dislike for Sheehan's contract, made vague references to other contract matters outside the record and suggested, without explanation, that it would be contrary to the governance of the agency to affirm the hearing officer's decision. The vote was called for swiftly, without meaningful review of the extensive legal briefing that had been submitted to the hearing officer and without any discussion or analysis of the decision under review. The decision to reverse the hearing officer appeared to be a foregone conclusion.
While the Retirement Board may not have liked Sheehan's contract, that does not mean that its provisions can be read as denying him pension-eligible compensation. The Retirement Board's "rationale must be substantiated by more than mere philosophical differences with the hearing officer." Environmental ScientificCorporation, 621 A.2d at 210.
For all of these reasons, this Court finds that the decision of the Retirement Board was arbitrary and capricious. R.I. Gen. Laws § 42-35-15(g)(6). Accordingly, this Court will not remand this matter to the Retirement Board for additional findings of fact and conclusions of law — which would countenance the agency's failings at the expense of the plaintiff's right to final adjudication of his appeal — but will reverse its decision outright, with instruction to the Retirement Board to further remand the matter, if necessary, so that the calculations required by the hearing officer's decision can be made. SeeSakonnet Rogers, Inc., 536 A.2d 893 (R.I. 1988).
 CONCLUSION
The decision of the Retirement Board is reversed, the decision of the hearing officer below is reinstated, and this case is remanded to the Retirement Board for further proceedings consistent with the hearing officer's decision. The parties shall confer and present to this Court forthwith for entry an agreed upon form of order and judgment, consistent with this Decision.
[1] In support of this argument, the ERSRI relies on decisions of the Rhode Island Superior Court in Certain Property Owners v.Pawtucket Bd. of License Comm'rs, C.A. No. PC00-2953, 2002 LEXIS 116 (R.I.Super.Ct. Aug. 27, 2002), and Spry v. Rhode IslandDep't of Human Svcs., C.A. No. PC03-6641, 2004 LEXIS 190 (R.I.Super.Ct. Nov. 9, 2002), in which the courts found, although our Supreme Court has not yet so held, that the timely filing of an appeal from a decision of a first tier administrative decision-maker to a second tier administrative decision-maker is a jurisdictional requirement. Id. at *7.
The decisions of the Superior Court in Certain PropertyOwners and Spry (while admittedly not binding precedent) are clearly distinguishable from the case at bar. In CertainProperty Owners, the second tier reviewer found that the plaintiffs' appeal from the first tier decision-maker was untimely and dismissed their appeal for that reason. Id. at *5. Likewise, in Spry, the plaintiff appealed a first tier decision to the second level of review. There, too, the agency found that that the plaintiff's appeal to the second tier administrative decision-maker had not been timely filed and therefore denied her request for relief. Spry, 2004 LEXIS at *7. In both of those cases, the reviewing Superior Court justices, bound by the standard of review set forth in R.I. Gen. Laws § 42-35-15, upheld the findings of the agency that the appeals had been untimely.See Certain Property Owners at *7; Spry at *8-9.
In this case, however, there is no question of the timeliness of the appeal from the first tier reviewer (the hearing officer) to the second tier reviewer (the Retirement Board) that the second tier reviewer (the Retirement Board) decided. Indeed, Sheehan filed that appeal timely. The question of timeliness in this case instead concerns Sheehan's initial appeal from and request for a hearing regarding ERSRI's decision denying his request that his wages be considered contributory for retirement purposes. With regard to that appeal and request for hearing, the ERSRI, unlike the first tier decision makers in the cases on which it relies, did not deny Sheehan's request for hearing on the grounds that it was untimely filed. It raised that issue for the first time before the hearing officer. As such, the hearing officer, even if considered analogous to the second tier decision makers in Certain Property Owners and Spry, was not bound to find an untimely appeal filing and in fact determined, unlike the administrative decision makers in Certain Property Owners andSpry, that Sheehan's request for a hearing was not untimely, on several alternative grounds. There is no evidence in the record of appeal to the Retirement Board from the hearing officer's decision to suggest that the Board saw it any other way. The cases cited by the ERSRI, therefore, are inapposite and in no way require this Court to find a jurisdictional bar to Sheehan's appeal. This Court will proceed, therefore, to address the issue of jurisdiction based on a review of the applicable facts and the law.
[2] See, e.g., Rossi v. Employees' Retirement System ofthe State of Rhode Island, C.A. No. 2004-364 M.P. (R.I. Supreme Ct. April 14, 2006), slip op. at 5 ("Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation [or, by analogy, an agency rule adopted pursuant to an enabling statute] is a question of law to which [the courts] apply de novo review.") (citing Inre Advisory Opinion to the Governor, 732 a.2d 55, 60 (R.I. 1999); City of East Providence v. Public Utilities Commission,566 A.2d 1305, 1307 (R.I. 1989)); Oregon Environmental Councilv. Kunzman, 817 F.2d 484, 493 (9th Cir. 1987)) (noting that "interpretations of [agency] regulations present questions of law, which are reviewable de novo").
[3] See Goodman v. Turner, 512 A.2d 861 (R.I. 1986) (question involving statutorily created condition precedent to suit can be raised by the parties or the court at any time).