DECISION
Before the Court is the appeal of Patrick J. Heaney ("Heaney"), seeking review of a final decision by the Rhode Island Department of Environmental Management ("DEM"). In that decision, the DEM, acting through its director, Jan H. Reitsma ("Reitsma" or "director"), denied Heaney's request for an upgrade of his multipurpose commercial fishing license to a multipurpose commercial fishing license with a gill net endorsement. Heaney also requests damages and attorney's fees. For the reasons stated herein, the decision and order of the DEM is reversed. Jurisdiction is pursuant to the Rhode Island Administrative Procedures Act ("RIAPA"), G.L. 1956 § 42-35-15.
 I Facts and Travel
This complaint arises from Heaney's application for an upgrade to his multipurpose commercial fishing license. Heaney has been a commercial fisherman since 1983. At various times between 1983 and 1992, he held commercial fishing *Page 2 
licenses in the states of New York and Alaska. Since approximately 1993, Heaney has held a multipurpose commercial fishing license in the State of Rhode Island. (See Ex. 6, License Summ.) In January 2003, at the time that Heaney submitted the application for an upgrade to his multipurpose commercial fishing license that led to this complaint, he owned and operated a thirty-foot commercial fishing vessel from which he generated his sole source of income and a substantial portion of his family's income.
Heaney applied for an upgrade on January 9, 2003. The DEM's Office of Boat Registration and Licensing (OBRL) promptly denied his application that same day. (McGrath Letter, Jan. 9, 2003). In a letter signed by Margaret McGrath, identified as a DEM Programming Services Officer, the denial was based on G.L. 1956 § 20-2.1-5(1)(iii), which, McGrath explained, "provides that all multi-purpose license holders as of December 31, 2002, shall be eligible to obtain a multi-purpose license, which shall allow the holder to engage in commercial fishing in all fisheries sectors at the full harvest and gear levels." (McGrath Letter). McGrath's letter went on to state that the DEM lacked the statutory authority to upgrade Heaney's license as he requested because it could not issue any new gill net endorsements. Id.
Heaney immediately filed a request for reconsideration by the DEM's newly statutorily created Commercial Fishing License Review Board (CFLRB). (Reconsideration Request Letter, Jan. 9, 2003). In a letter dated February 6, 2003, the DEM, again through McGrath, informed Heaney that his request for reconsideration could not be heard by the CFLRB because the governor had not yet appointed members to the Board as required by the Board's authorizing statute. (OBRL Letter, Feb. 6, 2003). Consequently, McGrath informed Heaney that the denial issued on January 9, 2003 was *Page 3 
final. Id. Heaney timely appealed the final decision to the DEM's Administrative Adjudication Division (AAD). (AAD Hearing Request Letter, Feb. 7, 2003.)
The AAD hearing was held on March 20, 2003 before Hearing Officer Joseph F. Baffoni ("Baffoni" or "hearing officer"). Given that the OBRL was unable to hear Heaney's appeal because no members had been appointed at the time that Heaney requested reconsideration, the appeal to the AAD transpired under unique circumstances. Instead of reviewing arguments made at an earlier hearing, Baffoni served as the initial fact finder. In addition to receiving several exhibits and stipulations into the record, Baffoni heard more than two hours of live testimony from the parties and two witnesses, Heaney and McGrath. (Tr. at 1, 63.) Baffoni asked Heaney several questions specifically related to Heaney's individual and family financial circumstances, as well as the impact of a denial of his license upgrade request:
 "Q. How do you think that [denial] will affect your commercial fishing business, in hard numbers?
 A. It's going to severely curtail it. It might put me out of business. I might be marginalized to the point where I can no longer pay my bills.
 Q. Do you own a home or do you rent?
 A. I own a home.
 Q. Do you have a mortgage on that house?
 A. I do.
 Q. Are you the sole breadwinner of your family?
 A. No, I am not.
 Q. Okay. Does your wife work?
 A. Behind every fisherman, there's a woman who works.
 Q. But is it fair to say that your income also supports the family? So your wife couldn't support the family by herself, could she?
 A. Absolutely not." (Tr. at 43-44.)
Under questioning from the DEM's counsel, Deborah George, McGrath reiterated the agency's contention that Heaney's application was denied because Heaney did not have *Page 4 
an endorsement — referred to as a "gill net license" before January 1, 2003 — as of December 31, 2002. The following interchange took place:
 "Q. Okay. What was the department's position as to why he was not eligible for a Gill Net Endorsement [sic] when he applied on January 9th?
 A. He was denied the Gill Net Endorsement [sic] January 9, 2003, because he did not hold it as of the 12-31-2002 date.
 . . . .
 [P]rior to January 1, 2003, all commercial licenses were licenses. There are no — licenses were not broken out into endorsements and fishery sectors. So prior to January 1, 2003 — when we were calling it `a Gill Net Endorsement,' [sic] in 2002 and earlier, it was always a `Gill Net License.' [sic] It wasn't deemed an endorsement, a gear endorsement, until the new restructuring of `03 took place.
 Q. I see. So you didn't have a Gill Net License [sic], then, as of 12-31-02?
 A. Correct. Correct.
 Q. All right. And now it's called a `Gear Net' — a `Gill Net Endorsement'? [sic]
 A. Correct." (Tr. at 50-51.)
On May 9, 2003, Baffoni recommended that the DEM grant Heaney's application.
In his Decision and Order ("Decision 1"), Baffoni found that Heaney
 "proved by a preponderance of the evidence that the denial of the requested upgrade would be an unreasonable hardship in that severe economic loss will result to Applicant [Heaney], which is unique to Applicant and has not been caused or exacerbated by prior actions of or inaction on the part of Applicant." (Decision 1 at 8.)
On June 23, 2003, DEM director Reitsma issued his Decision and Order ("Decision 2"), rejecting Baffoni's recommendation, and thereby denying Heaney's application. (Decision 2 at 1, 5.)
Pursuant to § 42-35-15, Heaney timely appealed Reitsma's decision to the Superior Court. Heaney alleges that Reitsma misinterpreted relevant statutory and regulatory provisions. (Appellant's Br. at 19-23.) Heaney also alleges that Reitsma *Page 5 
erroneously denied Baffoni's recommendation in view of the record by exceeding the DEM's statutory authority to reject the hearing officer's recommendation. (Compl. at ¶¶ 5, 6; Appellant's Br. at 18-19.) Lastly, Heaney alleges that Reitsma did not give the appropriate amount of deference to Baffoni's recommendation, thereby abusing the discretion afforded him by the RIAPA. (Compl. at ¶¶ 4, 7; Appellant's Br. at 16-17.) Heaney requests declaratory relief. In response, the DEM alleges that Reitsma's rejection of Baffoni's recommendation was consistent with applicable statutes and the DEM's regulations, and that Reitsma afforded Baffoni's recommendation the appropriate deference.
 II Standard of Review
The RIAPA states the standard that governs this Court's review of a determination by an administrative agency, including the DEM.See §§ 42-35-15, 42-35-18. Section 42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The appellate review authority granted this Court by § 42-35-15 "is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Barrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992); see Nickerson v. Reitsma,853 A.2d 1202, 1205 (R.I. 2004). This Court must affirm the agency's decision if any legally competent evidence exists in the record. Rhode Island Pub.Telecomm. Auth. v. Rhode Island State Labor Relations Bd., 650 A.2d 479,485 (R.I. 1994). "This limitation obtains even in situations in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency under review."Id. However, the Court is not bound by decisions of law reached by the agency. See Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989) (citingCarmody v. Rhode Island Conflict of Interest Comm'n, 509 A.2d 453, 458
(R.I. 1986)).
The Court may reverse, modify, or remand the agency's decision if the decision substantially prejudices the appellant by satisfying any of the six criteria explicitly stated in § 42-35-15(g). See Barrington Sch.Comm., 608 A.2d at 1138. The Court, in its limited review, explores the record to identify and correct any potential violations of the applicant's constitutional or statutory rights. See id. It is the Court's duty "to determine what the law is and its applicability to the facts." Chenot, 561 A.2d at 893. The amount of deference owed by the DEM director to the hearing officer is a question of law. See, e.g.,Potter's Inc. v. Virginia, 30 A.2d 276, 276 (Me. 1943) (determining that a court reviewing a lower court's decision for abuse of discretion is a question of law). *Page 7 
 III Law and Analysis A Statutory Interpretation
Heaney argues that Reitsma's decision was affected by error of law because Reitsma "incorrectly f[ound] that the Applicant did [not] have a right to receive a Gill Net Endorsement [sic]" under § 20-2.1-12(b) and by rejecting the hearing officer's interpretation of regulatory requirements. (Appellant's Br. at 19.) For its part, the DEM contends that the hearing officer incorrectly construed the agency's regulations and governing statutes regarding the issuance of new gill net endorsements and the agency's unreasonable hardship exception. (Appellee's Br. at 14-15.)
The director referred to a Rhode Island Marine Fisheries Council Management Plan to substantiate the DEM's claim that new gill net endorsements could not be issued. (Decision 2 at ¶ 4.) However, the management plan included in the evidentiary record was not in effect at the time of Heaney's application or the hearing officer's decision. In fact, the plan in the record did not become effective until November 27, 2003, almost eleven months after Heaney's application for an upgrade to his license and five months after Reitsma's decision. (Management Plan for the Finfish Fishery Sector at iv.) Consequently, Reitsma's reliance on this plan was clearly erroneous.
Furthermore, the DEM contends that Heaney was not eligible for consideration under the unreasonable hardship exception; therefore, Baffoni incorrectly applied this exception to Heaney's request. (Appellee's Br. at 15-16.) However, in a wide-ranging statute that became effective on January 1, 2003, the legislature identified the review procedure to be utilized when reconsideration is requested by any person whose *Page 8 
application for a commercial fishing license was denied by the OBRL.See An Act Relating to Fish and Wildlife, 2002 R.I. Pub. Laws 181 (amended 2004). The statute creates the CFLRB, a five-member review board to be appointed by the governor. G.L. 1956 § 20-2.1-12(b) (amended 2004). The statute instructs this board to "consider the impact that issuance of the license will have on the fisheries management program overall, equity with other license holders, consistency with prior agency decisions, consistency with management plans, unreasonable hardship to the applicant and consistency with the purposes of this act." Id. These criteria are incorporated verbatim into the DEM's regulations. See Rules and Regulations Governing the Management of Marine Fisheries, Dec. 11, 2002, § 6.7-10(g) ("Regulations").
The Court is mindful that "a primary rule of statutory construction is that words used in a statute should be given their ordinary literal meaning. . . . In addition, this court will not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory." Cocchini v. City ofProvidence, 479 A.2d 108, 111 (R.I. 1984). Given these principles of statutory construction, the detailed guidance found in § 20-2.1-12
indicates the legislature's intent to provide for meaningful review by the CFLRB. The statute provides specific criteria that the CFLRB must take into account when considering requests for reconsideration of denials of applications by the OBRL — the "impact that issuance of the license will have on the fisheries management program overall, equity with other license holders, consistency with prior agency decisions, consistency with management plans, unreasonable hardship to the applicant and consistency with the purposes of this act." Section20-2.1-12(b). Further, the statute requires that the CFLRB issue a written recommendation to the OBRL, stating the *Page 9 
grounds for its decision. Section 20-2.1-12(c). Since the review board had not been appointed at the time of Heaney's request for reconsideration, Baffoni, acting as the initial fact finder, considered these criteria exactly in reaching his determination that Heaney satisfied the unreasonable hardship exception. (OBRL Letter; Decision 1 at 6, 8.) Baffoni therefore acted in accordance with statutory and regulatory mandates in reaching findings of fact and conclusions of law.
Moreover, the DEM refers to three relevant regulations — Regulation 5.54, 6.7-10(g), and 6.8-7(c) — in contending that Baffoni incorrectly interpreted the agency's regulations to find that new gill net endorsements could be issued. (Appellee's Br. at 15, 16.) According to the director's decision, "the Department promulgated regulations consistent with the management plan in question that do not allow for new gillnet [sic] endorsements to be issued." (Decision 2 at ¶ 5.) The governing regulations were those issued on December 11, 2002. Seegenerally Regulations. The Court can find no evidence in the regulations supporting the DEM's assertion. Though the regulations make special provision for applicants who were authorized to use gill nets as of December 31, 2002 to receive a gill net endorsement, the regulations do not categorically prohibit issuance of gill net endorsements to applicants who were not authorized to use gill nets as of December 31, 2002, as the DEM would have the Court find. See Regulations § 6.8-7(c). On the contrary, the regulations state: "Subsequent gill net endorsement opportunities shall be established by rule, pursuant to applicable management plans." Id. Clearly, the possibility remained for applicants, such as Heaney, who were not authorized to use gill nets as of December 31, 2002, to receive gill net endorsements. The regulation left rule-making discretion in the hands of the DEM. *Page 10 
However, the agency has not identified any rule, issued pursuant to § 6.8-7(c), that categorically barred issuance of new gill net endorsements at the time of Heaney's application. Absent such a rule, the Court finds the director's decision, finding that no new gill net endorsements could be issued, is affected by error of law.
 B Deference Owed to Hearing Officer
On appeal, Heaney contends that the director failed to afford the appropriate standard of deference to the hearing officer's recommendation. (Compl. at ¶ 4.) The legislature has clearly indicated that a DEM hearing officer's findings of fact and conclusions of law are to be reviewed by the agency's director. See § 42-17.7-6(1). The director is empowered with discretion to "adopt, modify, or reject such findings of fact and/or conclusions of law." Id. One of two qualifications to this discretion is that the director must issue such modification or rejection in writing. Id.
The record evidences that Reitsma complied with the statute's writing requirement. The second qualification requires that the director "state the rationale" underlying the decision. Id. Reitsma's decision states:
 "The recommended decision [by Baffoni] fails to recognize the statutory mandate and authority given this Office to limit issuance of commercial fishing licenses and endorsements if necessary to protect the fishery; overstates the authority provided by statute to grant relief upon appeal from a license denial by the Department; [and] applies the `unreasonable hardship' test inappropriately. . . ." (Decision 2 at ¶ 1.)
This, combined with several additional pages of explanation, provides Reitsma's rationale. *Page 11 
At issue is whether Reitsma abused the discretion afforded him by § 42-17.7-6(1) to reject Baffoni's findings. (Compl. at ¶ 7.) The Rhode Island Supreme Court addressed a similar issue in its frequently cited decision, Environmental Scientific Corp. v. Durfee. 621 A.2d 200, 205
(R.I. 1993). In examining § 42-17.7-6(1), the Court described the two-tiered review process as "funnel-like." Envtl. Scientific,621 A.2d at 207. The Court then distinguished the review that occurs at the "mouth of the funnel" by the hearing officer from that which occurs "[a]t the discharge end of the funnel" by the DEM director:
 "Sitting as if at the mouth of the funnel, a hearing officer hears testimonial and documentary evidence from all affected parties: the applicant, the department, and interested members of the public. Just as the funnel narrows, the hearing officer analyzes the evidence, opinions, and concerns of which he or she has been made aware and issues a decision. At the discharge end of the funnel, the DEM director reviews the hearing officer's findings and issues a final decision. Because the director sits at the narrowest point of the funnel, he or she is not privileged personally to hear or witness the broad spectrum of information that entered the widest end of the funnel." Id. at 207-08.
The Court concluded: "Therefore, the further away from the mouth of the funnel that an administrative official is when he or she evaluates the adjudicative process, the more deference should be owed to the factfinder." Id. at 208.
Thereafter, in Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, the Supreme Court clarified its requirement that an agency director give deference to an earlier reviewing individual or entity.755 A.2d 799, 806 (R.I. 2000). In that case, the Court distinguished between the Department of Health's (DOH) advisory body and the adjudicative process required of the DEM. Id. The Court held that the DEM's hearing *Page 12 
officer, unlike the hospital emergency room approval process at issue inJohnston Ambulatory, "is clearly charged with a quasi-judicial role" because the officer conducts hearings and observes testimony and evidence presented. Id. If the hearing officer used the information gathered through the hearings, testimony, and evidence presented, then the officer's decision was necessarily based on a credibility determination. See id. at 807. According to the EnvironmentalScientific Court, "[o]bservations of live testimony necessarily enter into a determination of what the trial judge believes and disbelieves."621 A.2d at 206.
In such a review process, the Environmental Scientific Court held, "[t]he director should give great deference to the hearing officer's findings and conclusions unless clearly wrong." See 621 A.2d at 209. To satisfactorily prove that the hearing officer was "clearly wrong[,] . . . the DEM's rationale must be substantiated by more than mere philosophical differences with the hearing officer. An adequate rationale is one that relies on a previously articulated standard and is supported by substantial evidence in the record." Id. at 209-210.
In Heaney's situation, the review process utilized to consider his application was two-tiered and adjudicative in nature, thus requiring DEM director Reitsma to "give great deference" to Baffoni's findings.See id. at 209. Baffoni's authority was granted under the exact statutory provision considered in Environmental Scientific, §42-17.7-6(1).[1] See 621 A.2d 207. Moreover, the JohnstonAmbulatory Court expressly distinguished the DOH's "advisory" authorizing statute from the adjudicatory statute governing the DEM's review process, § 42-17.7-6(1). See 755 A.2d at 806. Similar to *Page 13 
the adjudicatory review process described in Johnston Ambulatory, the process used to consider Heaney's application consisted of a hearing before a hearing officer who "directly observe[d] all the testimony and evidence presented." See id. Unlike the DOH advisory review process that was distinguished in Johnston Ambulatory, Baffoni observed first-hand approximately two hours of live testimony from two witnesses: Heaney and McGrath. (Tr. at 1, 63.) Baffoni also listened to the arguments made by Heaney, representing himself pro se, and counsel for the DEM. (Tr. at 20-63.) In fact, it was Director Reitsma who relied on the "cold record" associated with an advisory review process to reach his decision.See Johnston Ambulatory, 755 A.2d at 807.
Baffoni's detailed findings of fact and conclusions of law indicate that he took into account the witnesses' testimony and the evidence submitted by both parties. (Decision 1 at 2.) He had to "sift through the testimonial evidence and select which facts carried the greatest weight." Envtl. Scientific, 621 A.2d at 207. Therefore, Baffoni made a credibility determination. See id. at 209. As such, Reitsma, as the ultimate decision-maker, owed "great deference" to the recommendations of the first-tier decision-maker, Baffoni. See Johnston Ambulatory,755 A.2d at 807.
Furthermore, Baffoni's decision explicitly lists, in eleven detailed paragraphs, various factors concerning Heaney's personal life and finances that Baffoni considered in reaching his determination that Heaney satisfied the DEM regulations' "unreasonable hardship" exception. (Decision 1 at 7; Regulations of the Division of Fish and Wildlife § 6.7-10(g)(v).) Baffoni took into account Heaney's career as a commercial fisherman, licensing history, mortgage on his commercial fishing boat, individual and family income, and impact of a denial of his upgrade request on Heaney and his family. *Page 14 
(Decision 1 at 7.) Baffoni also considered the impact of Heaney's request on the Rhode Island fishing industry, including the prevalence of gill net endorsements, the competitiveness of the fishing industry, and the preservation and restoration of the state's fish stocks.See id.
Since Baffoni's findings are owed great deference, to reverse Baffoni's findings, Reitsma must show that Baffoni's findings were "clearly wrong." See Envtl. Scientific, 621 A.2d at 209. However, Reitsma's decision provides only a cursory discussion of Baffoni's determination. Reitsma's decision merely states "that the hardship must be found to be `unique' to the applicant," essentially repeating the regulatory requirement. (Decision 2 at 3.) This conclusory statement fails to satisfy the RIAPA requirement that an agency's final order be "accompanied by a concise and explicit statement of the underlying facts supporting the findings." Section 42-35-12. Instead, "the written decision of the . . . [director] is bereft of any factfinding."East Greenwich Yacht Club v. Coastal Res. Mgmt. Council, 118 R.I. 559,376 A.2d 682, 687 (1977). "An administrative decision that fails to include findings of fact required by statute cannot be upheld."Sakonnet Rogers, Inc. v. Coastal Res. Mgmt. Council, 536 A.2d 893, 896
(R.I. 1988).
In addition, Reitsma did not provide "a previously articulated standard . . . [that] is supported by substantial evidence in the record" to refute Baffoni's findings. See Envtl. Scientific,621 A.2d at 209-10. Rather, Reitsma's decision fails to mention any of the evidence in the record pertaining to Baffoni's credibility determination. Moreover, the one authority explicitly mentioned by Reitsma as a previously articulated standard, *Page 15 
his Decision and Order in Matter of Thibeault,[2] could by no measure satisfy the "previous" component of this requirement because all the events leading to Reitsma's Decision and Order in Thibeault — the AAD hearing and the hearing officer's recommendation — occurred after the respective events in Heaney's proceedings, and Reitsma's final decision regarding Heaney's application and Thibeault's application were issued simultaneously.[3] As a result, the Court finds that the DEM did not satisfy its burden under Environmental Scientific, and its reversal of Baffoni's decision was arbitrary and constituted an abuse of discretion.
 Conclusion
After a thorough review of the record, the Court finds that the decision of the director of the DEM to reject the hearing officer's recommendation to grant Heaney a gill net endorsement upgrade to his multipurpose commercial fishing license was clearly erroneous in view of the record, affected by error of law, arbitrary, and constituted an abuse of discretion. Heaney's rights were substantially prejudiced. Accordingly, the decision and order issued by Reitsma on behalf of the DEM is reversed. As the plaintiff has withdrawn his claims for damages and attorney's fees, the Court will not address these issues. Counsel shall submit an appropriate order for entry.
[1] The text of § 42-17.7-6(1) has not changed since its enactment in 1989. See P.L. 1989, ch. 508, § 1 (codified at § 42-17.7-6(1)).
[2] Matter of Thibeault Decision and Order, (June 27, 2003). This is a Decision and Order of the DEM concerning an application for a gill net endorsement.
[3] Heaney appeared for the AAD hearing on March 20, 2003, while Thibeault's hearing occurred over a month later on May 7, 2003. Hearing Officer Baffoni issued his decision in Heaney's case on May 9, 2003, while the hearing officer's decision in Thibeault's case was not issued until June 12, 2003. Lastly, Reitsma issued the DEM's final decision in Heaney's case on June 27, 2003, the same day on which he issued his final order in Thibeault's case.